Mariann **COLLINS**, Appellant,

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, Appellee.**

No. 93–1571.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1993.

Decided March 3, 1994.

Counsel who presented argument on behalf of the appellant was Jeffrey C. Miller of Omaha, Nebraska. The names of Duncan A. Young and Jeff C. Miller of Omaha, Nebraska, appear on the brief of the appellant.

Counsel who presented argument on behalf of the appellee was Francis Joseph Carey of Rosemont, Illinois.

Before FAGG and WOLLMAN, Circuit Judges, and VIETOR,* District Judge.

WOLLMAN, Circuit Judge.

Pursuant to 29 U.S.C. § 1132(a)(1)(B), Mariann Collins brought this action against Central States, Southeast and Southwest Areas Health and Welfare Fund, seeking benefits for medical bills incurred by her late husband, Richard E. Collins ("Collins"). The district court[1] granted summary judgment for Central States, and Mrs. Collins appealed. We find that the Central States Trustees' decision to deny benefits was not arbitrary or capricious and therefore affirm.

---

* The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

## I.

From 1971 to 1990, the General Drivers & Helpers Local Union No. 554 ("Local 554") retained Collins' services as a researcher, lobbyist, writer, and editor. Under the direction of Local 554's secretary-treasurer, Collins researched legislation before the Nebraska state legislature and other political bodies and lobbied Local 554's position on such legislation. He also wrote articles for and assisted in the publication of Local 554's newspaper. Collins submitted all of his articles to Local 554 prior to publication, and it reserved the right to edit or censor any material that he submitted. Additionally, Collins attended Local 554's monthly meetings, at which he reported his activities to the union's general membership. Local 554 retained the right to terminate Collins' services at any time.

Collins was compensated on a monthly basis by Pro Law, an organization funded, controlled, and operated by Local 554. This compensation, which was Collins' sole source of income, was reported to the Internal Revenue Service on a 1099 Form rather than a W–2 Form. Local 554 reimbursed Collins for some of his work-related expenses and provided him with health care coverage by making contributions on his behalf to the Central States Health and Welfare Fund. Local 554 did not make contributions for Collins to the Central States Pension Fund as it did for its regular employees.

The Central States Health and Welfare Fund (the "Fund") is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The Fund is administered in accordance with the Central States Health and Welfare Fund Trust Agreement (the "Trust Agreement") and the Central States Health and Welfare Fund Plan Document (the "Plan"). To participate in the Fund, an individual must be an "employee" as defined by the Plan. The Plan's definition of employee includes "[a]ll persons employed by the Union [Local 554] upon being proposed by the Union and accepted by the Trustees." Art. I, § 1.25(b). The Plan states that "[i]n all instances the common-law test for, or the applicable statutory definition

of, master-servant relationship shall control Employee status." Art. I, § 1.25.

Until December 1989, Collins submitted medical claims to the Fund, and the Fund paid them. In late December 1989, however, Collins' coverage was brought to the attention of Albert E. Nelson, Director of Benefit Services for Central States. After investigating Collins' relationship with Local 554, Nelson wrote Collins a letter on January 11, 1990, explaining that Central States was pending his medical claims because it appeared that he was not an employee of Local 554 and thus was ineligible to participate in the Fund. The letter asked Collins to forward any information that would support a claim that he was employed by Local 554. In a letter dated January 14, 1990, Collins responded that he had no documents which indicated that he was a Local 554 employee.

During its March 1990 meeting, the Central States Board of Trustees, which consists of four employee representatives and four employer representatives, considered the question of Collins' eligibility and deferred it for further review. In early April, Collins' counsel submitted to the Trustees a letter arguing that Collins was employed by Local 554 under the Plan's terms. Collins' counsel also presented affidavits from Collins and Jerry Younger, Local 554's secretary-treasurer, both of which explained the relationship between Collins and Local 554. At their April meeting, the Trustees again deferred action on Collins' appeal because they wanted additional information before deciding the matter. On May 1, 1990, Nelson, on behalf of the Trustees, sent Collins' counsel a letter requesting, among other things, Collins' income tax returns filed since 1980; all written agreements between Collins and Local 554 and between Collins and Pro Law; and an explanation concerning why Central States did not make pension contributions for Collins. Collins and his attorney failed, however, to provide any of the requested information. At their May meeting, the Trustees decided that Central States would pay Collins' pending medical claims incurred prior to January 1, 1990; they unanimously voted to deny his claims after that date, however,

because he was not an employee as defined by the Plan.

Having been diagnosed with peripheral neuropathy, Collins died on September 1, 1990. As the representative of her husband's estate, Mrs. Collins brought this action, seeking benefits for Collins' 1990 medical claims. Central States moved for summary judgment. After reviewing the record before the Trustees, the district court granted the motion, finding that the Trustees' denial of benefits was not arbitrary or capricious. 820 F.Supp. 1194. This appeal followed.

## II.

We review a denial of benefits under the deferential arbitrary-and-capricious standard in those cases in which the ERISA plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Oldenburger v. Central States S.E. & S.W. Areas Teamster Pension Fund*, 934 F.2d 171, 173 (8th Cir.1991).

The Trust Agreement states that the "Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers." Art. IV, § 17. The Trust Agreement further provides that all controversies, including those over a denial of benefits, shall be submitted to the Trustees and that the Trustees' decision shall be binding on all parties. Art. V, § 2. Additionally, the Plan states that "the Trustees shall have the final authority to determine all matters of eligibility for the payment of claims." Art. X, § 10.01. These provisions grant the Trustees discretionary authority to construe the terms of the Trust Agreement and the Plan and to determine an individual's eligibility for benefits. *Oldenburger*, 934 F.2d at 173–74; *Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990).

In her brief, Mrs. Collins conceded that the Trust Agreement grants the Trustees discretion to decide questions concerning benefits claims and to construe provisions of the Trust Agreement and the Plan. Indeed, she stated that we should review the Trustees' decision under the arbitrary-and-capricious standard. Nevertheless, at oral argument, Mrs. Collins argued that we should apply a de novo standard of review in this case because whether Collins was an employee under the Plan is a legal question. She contended that when a fiduciary has discretionary authority, the arbitrary-and-capricious standard should be applied only to factual questions and de novo review should be applied to legal questions.

We find her argument unpersuasive. The Trust Agreement and the Plan give the Trustees broad authority to construe the Plan and to determine a claimant's eligibility for benefits. Accordingly, we conclude that the Trustees' determination that an individual is ineligible to participate in the Fund because he does not meet the Plan's definition of employee should be reviewed under the arbitrary-and-capricious standard. *See Oldenburger*, 934 F.2d at 173–74 (stating that the Trust Agreement vests the Trustees with discretion to interpret the meaning of the Plan's requirements of eligibility and to decide whether an individual fits under those requirements).

## III.

We turn now to the primary issue raised by this appeal: whether the Trustees' decision that Collins was not an employee as defined by the Plan was arbitrary and capricious. As discussed above, the Plan's definition of employee includes the language "all persons employed by the Union upon being proposed by the Union and accepted by the Trustees." Focusing only on the latter part of this definition, Mrs. Collins argues that the Plan defines employee as any individual who is "proposed by the Union and accepted by the Trustees" and that Collins was so proposed and accepted. Mrs. Collins' interpretation, however, ignores the first part of the definition, which states that the person must be "employed by the Union." Collins

may have been proposed by Local 554 and accepted by Central States, but under the Plan's terms he was ineligible to participate in the Fund unless he was employed by Local 554.

As stated earlier, the Plan provides that employee status is controlled by the common-law test for, or the applicable statutory definition of, the master-servant relationship. The only applicable statute cited by the parties is ERISA, and under ERISA the common-law test is used to define employee, *Nationwide Mutual Insurance Co. v. Darden*, — U.S. —, —, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Accordingly, we determine whether Collins was a Local 554 employee by applying the common-law master-servant test to the facts of this case. The Supreme Court has summarized this test in the following manner:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; and the tax treatment of the hired party.

*Id.* (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989)); *see also* Restatement (Second) of Agency § 220(2) (1958) (listing criteria for identifying master-servant relationship).

■ In deciding whether the Trustees' denial of benefits was arbitrary or capricious, we limit our review to the evidence that was before the Trustees. *See, e.g., Oldenburger*, 934 F.2d at 174. The record considered by the Trustees contains facts that support both parties' positions. Mrs. Collins points out that the relationship between Collins and Local 554 was exclusive and long-term. She also emphasizes that Local 554 told Collins which legislation to research and the position to advocate on such legislation; that Local 554 retained the right to edit and censor his articles; that Local 554 required him to report his activities to its general membership; and that Local 554 reimbursed him for his expenses.

On the other hand, several factors weigh in favor of the Trustees' decision that no employee-employer relationship existed. The services provided by Collins were professional in nature. Additionally, we note that Local 554 treated Collins differently than its regular employees. For example, Local 554 reported him to the Fund on a billing separate from the billing for its typical employees. Moreover, Local 554 did not make contributions on Collins' behalf to the Central States Pension Fund as it did for its other hirees. As for method of payment, Collins was paid by Pro Law, rather than directly by Local 554. And, with respect to tax treatment, the income paid to Collins was reported to the Internal Revenue Service on a 1099 Form rather than a W–2 Form, which is used to report income paid to employees, and Collins reported himself as being self-employed. Last, we note that Central States twice asked Collins to provide information and documentation that would demonstrate that he was employed by Local 554, and both times he failed to do so.

The record before the Trustees is silent with respect to the factors of work location and the amount of control Local 554 exercised over Collins' daily work schedule. Nonetheless, faced with a record that contains evidence supporting both parties' positions, we cannot find the Trustees' decision arbitrary or capricious.

■ Mrs. Collins next argues that the Trustees' decision to deny Collins' medical claims incurred after January 1, 1990, was arbitrary and capricious because it was inconsistent with Central States' acceptance of contributions for Collins and its payment of his claims during the previous eighteen

years. The propriety of Central States' alleged inconsistent conduct is not before us, and we therefore express no opinion as to whether such conduct was appropriate.[2] The relevant issue before us is whether the Trustees' decision that Collins was not an employee eligible to participate in the Fund as of January 1, 1990, was arbitrary and capricious. We have already determined that it was not, and Central States' inconsistent conduct does not change our view.

## IV.

■ Mrs. Collins argues that we should remand this case because the record does not contain a written opinion in which the Trustees set forth the specific reasons for their decision, as required by ERISA and our cases. Although Mrs. Collins did not raise this argument in district court, we consider it here in the interest of justice and thoroughness. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 660 (8th Cir.1992). In response to her argument, Central States has moved to supplement the record on appeal with a letter sent from Central States to Collins and to his attorney on June 7, 1990. We grant Central States' motion and deny Mrs. Collins' counter-motion to strike the supplemental evidence.[3]

Both ERISA and its regulations require an ERISA fiduciary to provide the benefits claimant with a written decision "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the [claimant]." 29 U.S.C. § 1133(1); *see also* 29 C.F.R. 2560.503-1(h)(3). We have stated that the Trustees are obligated to set forth the rationale underlying their decision so that the claimant may adequately prepare an appeal to the federal courts, *Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir.1981), and so that a federal court may properly review the Trustees' decision, *Bernards v. United Omaha Life Insurance Co.*, 987 F.2d 486, 488 (8th Cir.1993); *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569, 574 (8th Cir.1992).

The letter dated June 7, 1990, stated that the Trustees had determined that Collins was not eligible to participate in the Health and Welfare Fund subsequent to January 1, 1990, because he did not meet the Plan's definition of employee. The letter quotes Article I, Section 1.25(b) of the Plan, which defines eligible employees as "persons employed by the Union." The letter also quotes that portion of Section 1.25 which states that employee status will be determined by the common-law master-servant test. Although not overly detailed or analytical, this letter, when combined with the other correspondence between Collins and Central States, sufficiently set out the rationale behind the Trustees' denial of benefits and referenced the pertinent plan provisions so as to permit Mrs. Collins to challenge the denial in federal court and for us to review it. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1096 (8th Cir.1992) (finding that denial letters in conjunction with earlier correspondence satisfied written notice requirement).

The judgment is affirmed.

---

**2.** Mrs. Collins does not assert that Central States' inconsistent conduct gives rise to an estoppel claim, and we therefore also express no opinion as to whether such a claim would be valid.

**3.** Central States has also moved to file a supplemental appendix containing the parties' district court briefs to demonstrate that Mrs. Collins did not raise this argument in district court. Because Mrs. Collins concedes that she did not raise this argument in district court, we deny this motion.