Bernard J. **LICKTEIG**, Plaintiff–Appellee,

v.

**BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA,** Defendant–Appellee,

**Ottawa Truck Corporation,** Defendant,

**Central States, Southeast and Southwest Areas Health & Welfare Fund,** Defendant–Appellant,

**ST. LUKE'S HOSPITAL OF KANSAS CITY,** Intervenor–Plaintiff–Appellee,

v.

Bernard J. **LICKTEIG; Business Men's Assurance Company of America,** Intervenors–Defendants–Appellees,

**Central States, Southeast and Southwest Areas Health & Welfare Fund,** Intervenor–Defendant–Appellant,

**Ottawa Truck Corporation,** Intervenor–Defendant.

Nos. 94–3450, 94–3531.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1995.

Decided July 24, 1995.

Francis Joseph Carey, Rosemont, IL, argued, for appellant.

Robert Wilson McKinley, Kansas City, MO, argued (Richard E. McLeod and R. Denise Henning, Kansas City, MO, on the brief for appellee Bernard J. Lickteig; Alan B. Gallas and Paul R. Lamoree, Kansas City, MO, on the brief for appellee St. Luke's

Hosp., Kansas City; and Robert W. McKinley and James A. Durbin, Kansas City, MO, on the brief, for appellee Business Men's Assur. Co. of America), for appellees.

Before WOLLMAN, MURPHY, Circuit Judges, and BENNETT,* District Judge.

BENNETT, District Judge.

This appeal involves a question of liability for medical expenses under a welfare benefit plan formulated pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff–Appellee Bernard J. Lickteig filed suit to recover benefits pursuant to 29 U.S.C. § 1132. The issue raised in this appeal is which of two health benefits providers is responsible for payment of Lickteig's substantial medical expenses. The district court[1] held that Defendant–Appellant Central States, Southeast and Southwest Areas Health & Welfare Fund ("Central States") was liable for Lickteig's medical expenses. Central States and Lickteig appeal that determination.[2]

## I.

Plaintiff–Appellee Lickteig was a salaried employee of Defendant Ottawa Trucking Corporation ("Ottawa Truck"). Lickteig's regular work week was Monday through Friday. He typically had Saturday and Sunday as his days off from work. Lickteig worked on Friday, March 27, 1992, and was not scheduled to work on either Saturday, March 28, 1992, or Sunday, March 29, 1992. On Saturday, March 28, 1992, Lickteig suffered a severe gunshot wound while off-duty. He subsequently incurred substantial medical bills while hospitalized at Appellee St. Luke's Hospital of Kansas City. At no time on either March 28 or 29, 1992, was Lickteig placed on a leave of absence from Ottawa Truck.

Ottawa Truck offered its employees a welfare benefit plan regulated by ERISA. *See* 29 U.S.C. § 1002(2)(A). Commencing September 1, 1990, Ottawa Truck obtained the health insurance segment of its benefit plan from Appellee Business Men's Assurance Company of America ("BMA"). BMA provided health benefits to Ottawa Truck's employees up to and including March 31, 1992. The BMA policy included a provision which extended health benefits beyond the March 31, 1992, termination date. However, an extension under the BMA policy terminated when the individual became eligible for other group coverage.

Ottawa Truck contracted with Central States to provide replacement health benefits. Central States is a Taft–Hartley trust administered by a board of trustees consisting of four management and four labor trustees.[3] Central States Trust Agreement provides that "[t]he Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law." The Central States' trustees established a health and welfare plan ("the Central States Plan") which provides, *inter alia,* medical benefits to eligible employees. Central States' Plan Fund Document provides that the trustees shall have the authority to control and manage the operation and administration of the plan.

---

* The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Howard F. Sachs, Senior District Judge, United States District Court for the Western District of Missouri.

2. Lickteig states in his brief that he has "filed this appeal solely in a protective capacity to avoid waiving the opportunity to appeal should this Court find that the District Court erred in granting BMA's Motion for Summary Judgment and denying Central State's Motion for Summary Judgment." Lickteig br. at 7.

3. Central States is a completely self-funded employee welfare benefit plan that operates in over 35 states and provides medical benefits to over 144,000 participants, beneficiaries and retirees. A Taft–Hartley trust is a trust fund set up pursuant to the terms of the Labor Management Relations Act of 1947, *see* 29 U.S.C. § 186, commonly known as the Taft–Hartley Act. Section 302(c)(5) of the Taft–Hartley Act authorizes employer payments to jointly-trusteed Taft–Hartley trust funds which are "established ... for the sole and exclusive benefit of the employees of such employer, and their families and dependents" and meet certain other structural requirements. *See generally Bricklayers Int'l Union of America, Local 15 v. Stuart Plastering Co.,* 512 F.2d 1017, 1024 (5th Cir.1975).

Ottawa Truck's employees were accepted for coverage by Central States commencing on March 29, 1992. Central States' March 10, 1992, proposal for coverage of Ottawa Truck's employees contained the following limitation:

> Employees on Loss of Time (short-term disability), Sick Leave or any other form of absence from the company that keeps them from being considered "active" employees will *not* be covered by the Plan until they return to work and contributions are resumed.

The Central States Plan defined "active employee" as "[a]n Employee who is not on Leave of Absence, Sick Leave, Lay–Off, Quit or Discharge, but including an Employee who is on vacation or involved in a Temporary Work Stoppage."[4]

Central States began providing health benefits to Ottawa Truck's employees at 12:01 a.m. on March 29, 1992. In the original employee census compiled by Ottawa Truck and sent to Central States, Lickteig was on the list of those employees whom Ottawa Truck intended to receive coverage under the Central States Plan.

Following Lickteig's injury, BMA paid his covered medical expenses incurred prior to the March 31, 1992, termination date. Both BMA and Central States refused to pay Lickteig's medical bills incurred after March 31, 1992. Central States refused to pay Lickteig's medical bills on the grounds that he was not an active employee as of March 29, 1992.[5] BMA denied benefits to Lickteig on the grounds that its policy terminated on March 31, 1992, and that Lickteig was covered by Central States. Lickteig appealed Central States' denial of coverage through Central States' internal administrative appeals process, but his appeal was denied.

Lickteig then commenced this action against Central States, BMA, and Ottawa Truck, pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides that a beneficiary of a plan may sue "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." Intervenor–Appellee St. Lukes Hospital of Kansas City ("St. Lukes") then sought and was granted leave to intervene because it provided Lickteig with medical treatment. It is uncontested that St. Lukes holds an assignment of Lickteig's claims. Subsequently, Central States and BMA filed motions for summary judgment and St. Lukes filed a motion for partial summary judgment. Central States asserted that its decision to deny benefits to Lickteig was not arbitrary or capricious and therefore it was entitled to judgment in its favor. St. Lukes' motion for partial summary judgment took the position that because Lickteig was not eligible for coverage under the Central States Plan, BMA was therefore required to pay Lickteig's medical bills. BMA, on the other hand, contended in its motion for summary judgment that it could deny an extension of benefits to Lickteig, because he was covered under the Central States Plan.

In granting BMA's motion for summary judgment, and denying St. Lukes and Central States' motions, the district court found that Central States' decision was contrary to the language of the plan and therefore the trustees' decision was arbitrary and capricious. Central States and Lickteig appeal from that decision. We affirm.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court. *Lebrus v. Northwestern Life Ins. Co.,* 55 F.3d 1374, 1376 (8th Cir.1995); *A.J. ex rel. L.B. v. Kierst,* 56 F.3d

---

4. The Central States Plan defines "sick leave" as "[a] temporary absence from work caused by an Employee's illness, injury or pregnancy." It also contains the following definition of "leave of absence":

> An employee's voluntary temporary absence from employment, approved by the Employer. Individuals on Leave of Absence shall not engage in gainful employment for any other Employer, nor shall Leave of Absence status continue when an individual retires.

5. On September 11, 1992, in denying coverage, Central States wrote: "On March 29, 1992 Mr. Lickteig was obviously on a form of absence from the company and would not be considered an active employee and hence not covered by the Central States Plan for the loss that he suffered on March 28, 1992."

849, 853–54 (8th Cir.1995); *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir.1995); *Egan v. Wells Fargo Alarm Servs.,* 23 F.3d 1444, 1446 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). The standard for granting summary judgment is well established. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Tindle v. Caudell,* 56 F.3d 966, 969 (8th Cir.1995); *Munz,* 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *see Lebus,* 55 F.3d 1374, 1376. If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith,* 904 F.2d at 1247.

6. Of course, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authori-

## III.

■ We review a denial of benefits under the deferential arbitrary and capricious standard applicable to those cases in which the ERISA plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan...." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir. 1995); *Bennett v. Soo Line R. Co.,* 35 F.3d 334, 336 n. 4 (8th Cir.1994); *Bounds v. Bell Atlantic Enters. Flexible Long–Term Disability Plan,* 32 F.3d 337, 339 (8th Cir.1994); *Lutheran Medical Ctr. v. Contractors Health and Welfare Plan,* 25 F.3d 616, 620 (8th Cir.1994); *Collins v. Central States S.E. and S.W. Areas Health & Welfare Fund,* 18 F.3d 556, 558 (8th Cir.1994); *Oldenburger v. Central States S.E. & S.W. Areas Teamster Pension Fund,* 934 F.2d 171, 173 (8th Cir.1991).[6] Here, there is no dispute that the Central States Plan vests its trustees with discretion to interpret the meaning of its requirements for eligibility and to determine whether a party meets those requirements. Indeed, this court reached that conclusion last year regarding the same plan in *Collins,* 18 F.3d at 559.

■ We review de novo a district court's application of the deferential standard of review of the trustees' decision. *Lutheran Medical Ctr.,* 25 F.3d at 621; *Bolling v. Eli Lilly and Co.,* 990 F.2d 1028, 1029 (8th Cir. 1993). The trustees' decision to deny benefits will be deemed an abuse of discretion if the action is " 'extraordinarily imprudent or extremely unreasonable.' " *Lutheran Medical Ctr.,* 25 F.3d at 621 (quoting *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), in turn quoting George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 560 at 201–04 (rev. 2d ed. 1980)). Reviewing Central States' interpretation of its plan language requires us to examine the following factors: 1) whether

ty to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

the interpretation is consistent with the goals of the Central States Plan; 2) whether it renders any language in the Central States Plan meaningless or internally inconsistent; 3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether Central States has interpreted the provisions at issue here consistently; and 5) whether the interpretation is contrary to the clear language of the Central States Plan. *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir.1992); *accord Cooper Tire & Rubber Co.*, 48 F.3d at 371 (following *Finley* ); *Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609 (8th Cir.1994) (citing *Finley* ); *Lutheran Medical Ctr.*, 25 F.3d at 621 (relying on *Finley* ); *Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1438 (8th Cir.1993) (applying the five *Finley* factors).

■ The district court, while explicitly recognizing the five *Finley* factors, determined that the Central States' trustees abused their discretion in denying Lickteig's claim based upon its examination of only the fifth *Finley* factor. The district court concluded that the trustees' interpretation was contrary to the clear language of the Central States Plan. Although in the future we encourage district courts to apply all five *Finley* factors, or explain why a particular factor is inapplicable, upon examination of all five *Finley* factors, we agree with the district court that the Central States' trustees abused their discretion in denying Lickteig's claim.

■ We turn first to the fifth *Finley* factor because this is the sole factor relied on by the district court. We conclude, as did the district court, that the trustees' interpretation of the term "active employee" was contrary to the clear language of the Plan. The Plan defines "active employee" as "[a]n Employee who is not on Leave of Absence, Sick Leave, Lay–Off, Quit or Discharge, but including an Employee who is on vacation or involved in a Temporary Work Stoppage." In turn, "sick leave" is defined as "[a] tempo-

rary absence from work caused by an Employee's illness, injury or pregnancy." Clearly, Lickteig was an employee under the Plan's definition and had been listed as an employee by Ottawa Truck on its employee census. Thus, if Lickteig was an "active employee" as of March 29, 1992, he was eligible for medical coverage under the Central States Plan. Central States' rationale for rejecting Lickteig's claim is explained in its July 27, 1993 denial of Lickteig's administrative appeal:

> Your injury prevented you from reporting to work, and, therefore, from being considered as an "active employee" on the date that your bargaining unit was initially entitled to health and welfare coverage with this Fund. The terms of the acceptance of your bargaining unit required contributions to be submitted only on active employees, not those on sick leave, layoff or leave of absence.

The flaw in Central States' reasoning is at once obvious when one examines the specific definitions of "active employee" and "sick leave" found in the Plan. Read together, an active employee is one who is not temporarily absent from work caused by an illness, injury or pregnancy. Here, because Lickteig was not scheduled to work on either March 28, 1992, or March 29, 1992, he was not temporarily absent from Ottawa Truck prior to 12:01 a.m. on March 29, 1992, for any of the stated exclusionary reasons at the time Central States began providing health care benefits to Ottawa Truck's employees.[7] It therefore follows that under the terms of the Plan he was an active employee as of March 29, 1992, and should have been provided coverage by Central States.

Although the obvious intent of the language of the Central States Plan was to limit Central States' exposure to liability for claims of those Ottawa employees who were eligible to be placed on sick leave, the Plan's language only limits enrollment to those employees who were "on" some specific form of absence from the workplace. Therefore,

---

**7.** As Lickteig cogently pointed out in a letter to the trustees:

> Had my injury been less severe, requiring medical treatment but no time off work, I would

have reported to work Monday morning, as usual, as an active employee.

Central States' reliance on the Seventh Circuit decision in *Edwards v. Great–West Life Assurance Co.*, 20 F.3d 748 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 424, 130 L.Ed.2d 338 (1994), is misplaced. In *Edwards,* the policy language concerned employees "actively at work" not active employees. *Id.* at 749. In *Edwards,* the Seventh Circuit reversed the district court's judgment in favor of the plaintiff widow who claimed death benefits on an ERISA plan. *Id.* The plan in *Edwards* provided that the "insurance of any employee who is not actively at work on the date his insurance would otherwise become effective shall not become effective until the date of his return to work." *Id.* The employee was injured at home, lapsed into a coma and died on the day he would have otherwise qualified for the life insurance benefits. *Id.* Relying on this court's decision in *Todd v. Dow Chemical Co.*, 760 F.2d 192, 195 (8th Cir.1985), the Seventh Circuit pointed out that "[o]ur construction of the phrase 'actively at work' accords with the ordinary understanding that the employee must be at work or be capable of performing his job on the day the insurance is to commence." *Id.* at 749. Unlike the situation in *Edwards,* the term "active employee" is specifically defined in the Plan. If Central States wanted to limit eligibility benefits to employees who were actively working, or capable of performing their jobs on the day employees became eligible, it could very well have done so. Since Lickteig was not on any of the exclusionary forms of employment status as of March 29, 1992, we must conclude that he was an active employee as of that date. Central States' interpretation was therefore contrary to the clear language of the plan. *Finley,* 957 F.2d at 621.

We conclude that significant weight should be given to such a misinterpretation of unambiguous language in a plan. *Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 78 (4th Cir.1993) (noting that denial of benefits which is contrary to the clear language of the plan constitutes an abuse of discretion); *Davis v. Burlington Indus., Inc.,* 966 F.2d 890, 895 (4th Cir.1992) ("If the plan language is unambiguous, however, we would not defer to a contrary interpretation" by the trustees.); *Callahan v.*

*Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir. 1991) (most important factor in considering whether denial of benefits was arbitrary and capricious is the language of the plan); *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982) ("When the trustees' interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.").

Regarding the remaining four *Finley* factors, we first examine whether the trustees have interpreted the policy provisions consistently. The summary judgment record is silent on this *Finley* factor. Even if the court were to assume, *arguendo,* that the term had been applied consistently, we have previously indicated that "if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious." *Morgan v. Mullins,* 643 F.2d 1320, 1324 n. 4 (8th Cir.1981); *see Dennard,* 681 F.2d at 318. We next consider whether the trustees' interpretation of the Central States Plan was consistent with its goals. We conclude that Central States' interpretation is not consistent with the goals of the Central States Plan, because it erroneously deprives employees of benefits which would otherwise be due them under the unambiguous terms of the Plan. *See Finley,* 957 F.2d at 621. The final two *Finley* factors, whether Central States' interpretation renders any language in the Plan meaningless, and whether its interpretation conflicts with the substantive or procedural requirements of ERISA, *id.,* do not weigh against Central States' action in denying Lickteig coverage. These two factors are insufficient to overcome the fact that Central States' interpretation runs contrary to the clear language of the Plan. *See Lockhart,* 5 F.3d at 78; *Davis,* 966 F.2d at 895; *Callahan,* 941 F.2d at 460; *Dennard,* 681 F.2d at 314.

We therefore conclude that the district court properly held that Central States' denial of benefits was an abuse of discretion. Because Lickteig was eligible for medical benefits under the Central States Plan, the district court properly granted BMA's motion for summary judgment, and denied both Central States' motion for summary judg-

ment and St. Lukes' partial motion for summary judgment.

For the foregoing reasons, we affirm the district court.