# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3974

_____

| | | |
|---|---|---|
| Bradley J. Hillstrom, M.D., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| John R. Kenefick; Briggs and Morgan, | * | District of Minnesota. |
| PA; GE Group Life Assurance | * | |
| Company, formerly known as Phoenix | * | |
| American Insurance Company, | * | |
| | * | |
| Appellees. | * | |

_____

No. 05-3975

_____

| | |
|---|---|
| Bradley J. Hillstrom, M.D., | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| John R. Kenefick; Briggs and | * |
| Morgan, PA, | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |
| | * |
| GE Group Life Assurance Company, | * |

formerly known as Phoenix American    *
Insurance Company,                      *
                                        *
            Appellee.                   *
                            _____

                    Submitted: September 28, 2006
                        Filed:  April 9, 2007
                            _____

Before WOLLMAN, BOWMAN, and BENTON, Circuit Judges.
                            _____

BOWMAN, Circuit Judge.

    Bradley J. Hillstrom; John R. Kenefick and the law firm of Briggs and Morgan, P.A. (collectively, Kenefick); and GE Group Life Assurance Company (GEGLAC) are all parties having various roles in this appeal. Hillstrom and Kenefick, as appellant and cross-appellant, challenge decisions of the District Court[1] in this convoluted case that has its basis in Hillstrom's claim for long-term disability benefits. We affirm.


                               I.


    Hillstrom is a physiatrist (a physician specializing in physical medicine or physical therapy) who is seeking long-term disability benefits under a policy issued by Phoenix American Life Insurance Company to an entity called Rehab One, Inc.[2]

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota. Some of the preliminary orders in this case were entered by the Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

[2]The terms of the policy are set out in two documents, the "certificate" and the "policy." We use the term "policy" to encompass all relevant terms, whether they

That policy is an employee benefit plan governed by ERISA.[3] GEGLAC is defending the suit as Phoenix's successor in interest. Kenefick is an attorney and a shareholder in Briggs and Morgan. Kenefick represented Hillstrom in his initial attempt to collect disability benefits from Phoenix.

On April 1, 1989, Hillstrom and Rehab One, of which Hillstrom was part owner, executed a document captioned "Employment Agreement." Pursuant to that agreement, Rehab One employed Hillstrom as chief executive officer. Hillstrom's compensation was limited to stock options in Rehab One "until such time, if ever, that [Rehab One] agrees, in its sole discretion, to provide additional compensation." Employment Agreement pt. III. Hillstrom's duties were detailed in an exhibit attached to the agreement, and he was to "commit such time and effort as is reasonably required for discharge of his responsibilities under [the] Agreement." Id. pt. I.

Rehab One purchased a group long-term disability policy from Phoenix with an effective date of January 1, 1994, covering Rehab One's active full-time non-union officer employees whose earnings exceeded $35,000. The eligible employees were not listed by name in the policy, which was cancelled in 1997 as Rehab One went out of business.

On January 7, 1994, Rehab One and HCA Partners, L.L.C., entered into a "Management Agreement." According to this agreement, HCA was a Wyoming limited liability company formed to provide "directorship and management services to Rehab One" through HCA's principals: Bradley Hillstrom, Scott D. Hillstrom (Bradley's brother), and John E. Clark, M.D. Management Agreement at 1.

---

appear in the "certificate" or the "policy" portion of the documents.

[3]Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001–1461 (2000 & Supp. III 2003) and in scattered sections of 26 U.S.C.).

According to the agreement, the HCA principals were all "directors and/or officers of Rehab One and . . . responsible for its general management." Id. The parties agreed that the HCA principals would "perform all general management services" for Rehab One, except for those furnished by Rehab One's president. Id. But the capacities in which the HCA principals were to serve were not specified by the agreement. In return for the services of HCA and its principals, Rehab One was to pay HCA a "Management Fee" of $1,200,000 annually ($100,000 per month), but the agreement did not say how the fee was to be divided among the HCA principals—if at all. Id. at 2. The Management Fee was "the entire consideration for all services to be rendered by HCA and/or by the HCA Principals, except that in addition to the Management Fee [Scott] Hillstrom shall be a *payroll employee* of Rehab One and shall receive a monthly salary of $8,333.33." Id. (emphasis added). The 1989 Employment Agreement between Rehab One and Hillstrom individually was not mentioned in the Management Agreement.

On January 16, 1995, Hillstrom fell while snowboarding and hit his head and back. The next day, an MRI of Hillstrom's brain was read as normal, notwithstanding the severe headaches he was experiencing. By his own admission, Hillstrom started self-medicating with alcohol and Vicodin, a prescription narcotic pain reliever. This continued until April 19, 1996, when he began inpatient treatment for chemical dependence. After treatment, Hillstrom continued to complain of neurological difficulties, including memory problems and difficulty concentrating, and a psychiatrist declared him disabled as of the date of the snowboarding accident. It was about this time that Hillstrom retained Kenefick to represent him in his claims for long-term disability benefits. Kenefick prepared a claim for the Phoenix benefits and submitted it on October 17, 1996.

There followed over the months a course of correspondence regarding Phoenix's review of Hillstrom's claim. Generally, the issues included the source and amount of Hillstrom's income for his work for Rehab One; whether Hillstrom was under the

regular care of a physician during the claimed period of disability, as the policy required; whether the alleged disability was the result of substance abuse; and the onset date of the alleged disability. Phoenix also sought the assistance of financial consultant Coopers & Lybrand, who determined that Hillstrom had no insurable income under the long-term disability policy issued to Rehab One. On January 22, 1998, Phoenix sent a letter to Kenefick noting that Phoenix had yet to receive a response from Kenefick "regarding the employment, financial, medical and Other Income documentation previously requested." Letter from Murphy (Phoenix) to Kenefick (Briggs and Morgan) of Jan. 22, 1998. That letter said, "Based upon the information made available to us, Dr. Hillstrom has not provided the required Proof of Eligibility, Proof of Disability and Proof of Loss as defined under this plan in order to qualify for payment of benefits . . . ." Id. On several occasions after that, Kenefick submitted to Phoenix additional information on behalf of Hillstrom's claim. Phoenix responded employing the language of denial quoted above. Kenefick filed an appeal in February 1999, which Phoenix denied by letter dated May 17, 1999: "[T]he reasons for our denial of the claim have not changed and are as set forth in our prior correspondence." Letter from Kelleher (Phoenix) to Kenefick (Briggs and Morgan) of May 17, 1999.

In April 2004, Hillstrom filed suit against Kenefick in Minnesota state court claiming legal malpractice for, among other things, Kenefick's failure to correctly identify the applicable statute of limitations for mounting a court challenge to Phoenix's denial of benefits. Hillstrom then filed an amended complaint adding GEGLAC (Phoenix's successor) as a defendant and seeking "a declaration of his rights . . . regarding the statute of limitations applicable to his disability claim against Phoenix Life," or as an alternative to relief on his malpractice claim, an award of disability benefits directly from GEGLAC. Second Amended Complaint Counts III, IV. GEGLAC removed the case to federal court in August 2004. A few days later, Kenefick filed his answer and included a counterclaim and cross-claim for declarations that (1) the statute of limitations on Hillstrom's claim against GEGLAC

for benefits had not run and (2) in any event, Hillstrom was not entitled to disability benefits under the terms of the policy that Phoenix issued to Rehab One. In September, GEGLAC filed a motion to dismiss all of Hillstrom's claims against the company as time-barred. On December 9, 2004, the District Court granted GEGLAC's motion to dismiss on statute of limitations grounds. After that, on December 30, the District Court granted in part Hillstrom's motion to amend his complaint to add claims against GEGLAC for breach of fiduciary duty for failure to provide plan documents. And in January 2005, the District Court granted Kenefick's motion to reconsider its December 9, 2004, order dismissing all claims against GEGLAC, in light of the decision to allow Hillstrom to amend his complaint to bring a claim against GEGLAC for breach of fiduciary duty.

Kenefick filed a motion for summary judgment on May 16, 2005. He argued that no genuine issues of material fact remained and that he was entitled to judgment as a matter of law on Hillstrom's malpractice claim. Kenefick maintained that Hillstrom could not show that he, Hillstrom, was entitled to long-term disability benefits under Rehab One's policy, for the reasons set forth in the series of denial letters from Phoenix. Kenefick further contended that if Hillstrom were indeed disabled, the disability was the result of mental illness (substance abuse), and any benefits were therefore subject to a twenty-four-month cap. Finally, Kenefick argued at some length that, in any event, the applicable statute of limitations would not bar Hillstrom's suit against GEGLAC for disability benefits, so Hillstrom could not prove his claim of legal malpractice. He asked the court to reconsider its December 9, 2004, order to the contrary.

GEGLAC's May 16, 2005, motion for summary judgment likewise argued no disability and no eligibility, or, at most, disability by reason of mental illness. GEGLAC agreed with the District Court's decision that the statute of limitations had run.

-6-

Also on May 16, 2005, Hillstrom filed his own motion for summary judgment. His argument mirrored his amended complaint: he was entitled to either (1) summary judgment against GEGLAC on his claim for long-term disability benefits or, if that suit was time-barred, (2) summary judgment against Kenefick for the value of the long-term disability benefits under the Phoenix policy that he would have received but for Kenefick's alleged malpractice in handling Hillstrom's claim.

On June 30, 2005, the District Court heard oral arguments on the motions for summary judgment and on Kenefick's motion to reconsider the decision on the statute of limitations. In September 2005, the court granted Kenefick's and GEGLAC's motions for summary judgment, denied Hillstrom's motion for summary judgment, and dismissed Hillstrom's third amended complaint. Kenefick's motion for reconsideration was denied as moot. Hillstrom appeals the denial of his summary judgment motion. Kenefick cross-appeals on the statute of limitations question, continuing to argue that Hillstrom filed suit against GEGLAC within the time allowed.

II.

We review the decision to grant summary judgment de novo and will affirm if, viewing the evidence in the light most favorable to Hillstrom, we conclude there are no genuine issues of material fact and Kenefick is entitled to judgment as a matter of law. See Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 526 (8th Cir. 2007). In our review, we apply the same standard as the District Court, which brings us to the first issue we must address: what standard do we, the federal courts, apply in reviewing this particular denial of benefits? We review de novo the District Court's determination of the appropriate standard. Butts v. Cont'l Cas. Co., 357 F.3d 835, 837 (8th Cir. 2004).

Judicial review of a decision to deny benefits under an ERISA plan—whether for abuse of discretion or plenary—is determined by the terms of the plan in question.

If the plan administrator is vested with discretionary authority to interpret the plan or make decisions regarding eligibility for benefits, then the courts review only for an abuse of that discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Otherwise, we review the denial of benefits de novo.

There are in the record three versions of the long-term disability policy that Phoenix issued to Rehab One on January 1, 1994. Each is marked with a different "LAST DATE PRINTED" on the face of the group certificate: March 12, 1994; March 23, 1999; and November 11, 2004. And there are language discrepancies among the three versions. The 1994-printed policy is the one Phoenix sent to Kenefick after Hillstrom engaged Kenefick to represent him in filing claims for disability benefits. That version is missing every other page and apparently was used throughout much of the administrative claims process. Later in that process, a colleague of Kenefick's from Briggs and Morgan requested a complete copy. It remains a disputed fact whether Kenefick ever worked with a complete copy while he was representing Hillstrom.

The 1999-printed policy was produced with GEGLAC's Rule 26[4] disclosures as the policy in effect on January 16, 1995, the date of Hillstrom's snowboarding accident. The 2004 version, also produced during discovery, was certified by a compliance analyst for GEGLAC as the version in effect on January 1, 1995. One of the many conundrums we have encountered in this appeal is why language in the policy documents—all of which are for policyholder Rehab One, Inc., number 100-0870, with an effective date of January 1, 1994—mysteriously changed upon each reprinting. In particular, why does the policy printed in 2004, and certified to be the policy in effect on January 1, 1995, have different language from the policy printed in 1999, when the policy was cancelled *before* the 1999 print date? That is, how can

---

[4]Rule 26 of the Federal Rules of Civil Procedure sets out the disclosures required, regardless of whether requested, during discovery in civil cases.

a policy containing language that evolved between 1999 and 2004, *after* the policy was cancelled, be the applicable policy?  But that is what is in the record before us.

The fact that the record contains multiple versions of the policy with different language is more than just a curiosity when it comes to the underlying standard of review in this case.  The versions with the 1994 and 1999 print dates include this language under the heading "Benefits Fiduciary": "[W]e [Phoenix] are charged with the obligation, and possess discretionary authority to make claim, eligibility and other administrative determinations regarding" the long-term disability policy.  Policy printed Mar. 12, 1994, at 22; Policy printed Mar. 23, 1999, at 22.  That is, the language in these versions gives discretion to the plan administrator to make decisions regarding eligibility.  As we have said, the courts would therefore review any such determinations for an abuse of the plan administrator's discretion.  The "certified" 2004-printed policy has no such language, however, so the plan administrator's decision regarding eligibility would be reviewed de novo under the terms of that version.  The District Court, while recognizing that identifying the operative version of the policy raises a genuine question of fact, nevertheless determined that the result would be the same under either standard of judicial review.  That is, the question of fact, while genuine, is not material and does not preclude entering judgment as a matter of law.[5]  Admittedly, we were at first skeptical at that notion, but upon our de novo review of the District Court's de novo review of the plan administrator's decision, we have to agree.  As we explain <u>infra</u>, we conclude that Phoenix made the correct determination under either standard of review.  Before we get to the legal analysis, however, there are other discrepancies among the three versions of the policy that we will address here while we are on the subject.

---

[5]Kenefick, in his cross-appeal, argues that the which-policy-applies question is material and would rule out summary judgment for Hillstrom, should we reverse the summary judgment entered in favor of Kenefick.  Hillstrom, of course, does not raise it as a material fact since it would not be favorable to his position to have Phoenix's eligibility determination reviewed only for an abuse of discretion.

Under the subsection headed "Proof of Loss," the 2004-printed policy gives Phoenix the right to require proof of "Other income benefits." Policy printed Nov. 11, 2004, at 25. By the terms of the 1999-printed policy, Phoenix may require, in addition to the "Other income benefits" information, "[b]usiness and financial records or any other pertinent financial documentation we may deem necessary." Policy printed Mar. 23, 1999, at 23. As for the policy printed in 1994, the "Proof of Loss" subsection would apparently be found on one of the every-other missing pages since no such subsection appears in that version of the policy. The extra "Proof of Loss" language from the 1999-printed policy also appears in a January 1998 denial letter from Phoenix, causing Hillstrom to claim that Phoenix was requiring more information that it was entitled to receive in order to determine proof of loss. Again we agree with the District Court that this difference is of no consequence, as both the 1999 and the 2004 versions of the policy permit Phoenix to "require additional Proof of your claim at any reasonable time during the Period Of Disability." Id.; Policy printed Nov. 11, 2004, at 25.

The other difference of note among the printed versions of the policy concerns the crux of this case: the description of persons eligible for benefits under the policy issued to Rehab One. The versions printed in 1994 and 1999 contain this language:

Coverage Eligibility:
EACH FULL-TIME NON-UNION EMPLOYEE
Eligible Class:
EACH ACTIVE OFFICER WHOSE BASIC ANNUAL EARNINGS ARE MORE THAN $35,000

Policy printed Mar. 12, 1994 (Group Certificate); Policy printed Mar. 23, 1999 (Group Certificate). "Coverage Eligibility" in the policy printed in 2004 is described the same as in the earlier versions, but the "Eligible Class" is described as:

ALL ACTIVE FULL-TIME EMPLOYEES AS LISTED BELOW:
EACH OFFICER WHOSE BASIC ANNUAL EARNINGS ARE GREATER THAN $35,000

Policy printed Nov. 11, 2004, at 3. Although Hillstrom believes the language found in the 2004-printed "certified" policy should apply to other aspects of the case, such as the standard of review and the proof of loss discussed above, here he prefers the language of the versions of the policy dated 1994 and 1999. The District Court noted Hillstrom's desire to "pick and choose the most favorable policy language" and decided the case accommodating his wishes, perhaps taking this approach as viewing the record in the light most favorable to Hillstrom. Mem. Op. & Order at 9. The court again determined that it would grant summary judgment to Kenefick even applying the language that Hillstrom sees as more helpful to him. (Frankly, we do not see a substantive difference when the eligibility provisions are read as a whole and not in isolation.) We agree with the District Court and conclude that the policy-language discrepancy on this matter is a question of fact but not a material one.

III.

We come now to our legal analysis of the issues in this case. To begin, we sum up the positions of the parties on appeal:

Hillstrom wants benefits, preferably directly from GEGLAC on the merits of his disability claim. His desired outcome: we hold that his suit against GEGLAC is not time-barred, that he is an eligible Rehab One employee, and that he is permanently disabled within the meaning of the policy since January 16, 1995, and not by reason of mental illness. If the District Court is correct that the statute of limitations has run on his lawsuit against GEGLAC, Hillstrom would seek to proceed on his legal malpractice claim in an attempt to collect the value of disability benefits from Kenefick. But either way, Hillstrom must be eligible for benefits under the policy to

succeed, and so we must reverse the holding of the District Court to the contrary for his claim to damages from either GEGLAC or Kenefick to stay alive.

Kenefick prefers the conclusion reached by the District Court in granting summary judgment: Hillstrom is not eligible for benefits. The basis for that conclusion, as far as the defendants are concerned, can be either that Hillstrom is not an eligible employee or that Hillstrom is not disabled within the meaning of the policy. A less satisfactory outcome for Kenefick is that Hillstrom is disabled as a result of mental illness so that he is only entitled to twenty-four months of benefits. In any case, Kenefick thinks the District Court got it wrong in declaring that Hillstrom's lawsuit against GEGLAC is time-barred. If Hillstrom can proceed on his claim against GEGLAC for benefits, the primary basis for his malpractice claim against Kenefick—failure to correctly identify the applicable statute of limitations—disappears.

Only GEGLAC prefers that we affirm the District Court on all issues raised in the appeals. GEGLAC maintains that the statute of limitations on Hillstrom's suit for benefits has expired and that Hillstrom is not an eligible employee anyway. GEGLAC would have us go even further and declare that Hillstrom is not disabled at all or, at most, is disabled as a result of mental illness.

A.

For his first issue on appeal, Hillstrom claims that the reasons GEGLAC now advances, in this litigation, for denying benefits are different from those given in Phoenix's various denial letters sent during the administrative process. Under ERISA, Phoenix was required to "set[] forth the specific reasons" for denying benefits "in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). In addition, Hillstrom was to be afforded "a full and fair review" of the denial of his request. Id. § 1133(2). According to Hillstrom, Phoenix's letters failed to "identify

-12-

the specific reasons for the denial or the specific provisions on which it is based," or only "generically" indicated that he had failed to provide the necessary proof of eligibility for benefits. Br. of Appellant at 51. According to Hillstrom, Phoenix declared during the administrative process that it was denying benefits because Hillstrom was not a "Salaried Employee" of Rehab One, and GEGLAC may not now assert other reasons for denial that were not described with specificity in the letters from Phoenix. And since "Salaried Employee" is merely a boilerplate or orphan definition in the policy, and is not found in the "substantive terms" of the policy, Hillstrom contends that he was not required to be a "Salaried Employee" in order to be covered by the policy. Id. at 52. Under this reasoning, Hillstrom says he is eligible for benefits.

While GEGLAC did declare in its denials that Hillstrom was not a "Salaried Employee" within the meaning of the Phoenix policy, the record reflects that by no means did Phoenix rely on that explanation alone. Numerous times over the months that Hillstrom's claim was pending, Phoenix employees corresponded with Kenefick, seeking additional information under specified terms of the policy. Policy definitions were set out, and areas where evidence was lacking were identified. It is clear from the letters that Phoenix was having difficulty establishing that Hillstrom was an employee of Rehab One and that he had received insurable income from Rehab One during the term of the policy. As evidenced by Kenefick's lengthy appeal letter (nineteen pages plus exhibits), he was fully aware of the reasons for denial. And Phoenix's response to that appeal letter stated yet again that "[b]ased on the totality of the information currently available to us," and for reasons "set forth in our prior correspondence," Hillstrom is not entitled to benefits under Rehab One's long-term disability policy. Letter from Kelleher (Phoenix) to Kenefick (Briggs and Morgan) of May 17, 1999. "Although not overly detailed or analytical, this letter, when combined with the other correspondence between [Phoenix and Kenefick], sufficiently set out the rationale behind [Phoenix's] denial of benefits . . . ." Collins v. Cent.

-13-

States, Se. & Sw. Areas Health & Welfare Fund, 18 F.3d 556, 561 (8th Cir. 1994) (citing Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1096 (8th Cir. 1992)).

We also reject the contention that GEGLAC is now advancing *"post hoc* rationales" for denying benefits.[6] Br. of Appellant at 47. As we have said, the letters from Phoenix consistently iterated that Hillstrom had not shown that he was eligible to receive benefits, had not shown that he was disabled, and had not shown proof of loss as defined by the policy. Some of those letters requested specific information to verify the source of Hillstrom's income; the amount of earnings received from Rehab One, if any; Hillstrom's duties for Rehab One; and the nature and onset of his disability. Nothing of substance has been advanced in the litigation that was not raised in the administrative process. It may be true that GEGLAC devotes far more diligence in this litigation to challenging the existence, nature, and onset of Hillstrom's asserted disability than Phoenix did in its administrative denials. There is even some indication in the record that the insurer may have acquiesced to the fact of disability, at least on some level. But ineligibility on this basis **was** mentioned in the denial letters. In any event, the District Court did not reach the issue of Hillstrom's disability vel non, and neither do we.

Even if GEGLAC were relying on new rationales that were not a part of the administrative record, Hillstrom's argument would fail. All of the rationales (except perhaps the one concerning the "Salaried Employee" definition) were based on specific policy requirements. And we have held that upon de novo review of a denial of benefits, "a trial court *must* consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage," even where "not relied upon by the plan administrator at the time the denial was made." Weber v. St. Louis Univ., 6 F.3d 558, 560 (8th Cir. 1993) (emphasis added). "[T]o do otherwise would 'permit the oral modification of employee welfare plans

---

[6]We assume that Hillstrom means after-the-fact rationales.

governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it.'" Id. (quoting Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 660 (8th Cir. 1992). Because we are conducting a de novo review of the plan administrator's decision, Hillstrom's argument that this is unfair to him is unavailing. In any case, "*de novo* review on an expanded record would produce the same conclusion" as de novo review of the administrative record alone. Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999), cert. denied, 528 U.S. 1136 (2000).

Hillstrom relies on Marolt v. Alliant Techsystems, Inc., 146 F.3d 617 (8th Cir. 1998), for the proposition that we should not allow him "to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." Id. at 620. But we have determined that after-the-fact interpretations are not at issue here.

Hillstrom's first argument for reversal fails.

B.

Hillstrom next argues that he is eligible to receive long-term disability benefits under the Phoenix policy issued to Rehab One because he was an employee of Rehab One receiving earnings in excess of $35,000 from Rehab One at the onset of his disability. We disagree.

As we explained supra, an employee eligible for benefits under the Phoenix policy is described a bit differently in the earlier-printed versions than in the 2004-printed policy. As Hillstrom urges and the District Court did, we apply the language of the earlier renderings of the policy here. So to qualify for benefits, Hillstrom must have been, as of the date he became disabled, an active full-time employee officer of Rehab One with basic annual earnings exceeding $35,000. In granting summary judgment to Kenefick, the District Court determined Hillstrom was not a Rehab One

employee and had no earnings from Rehab One. We first consider the "employee" question and conclude, as a matter of law, that Hillstrom was not an employee of Rehab One at any relevant time.

Under the terms of the Phoenix policy, an active full-time employee was required to work at the employer's usual place of business for at least thirty hours a week. Viewing the record in the light most favorable to Hillstrom, he satisfied the active and full-time requirements. But that does not mean he is an "employee" entitled to benefits. The term "employee" is not further defined in the policy, so we look to the language and decisional law of ERISA. The Supreme Court has held that in light of ERISA's "completely circular" definition of employee ("any individual employed by an employer"), we should apply "a common-law test" to determine if a person is an employee eligible for benefits under an ERISA-governed policy or an independent contractor who is not. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). We must "consider the hiring party's right to control the manner and means by which the product is accomplished." Id. (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989)). We do that by looking at the so-called "other" Darden factors:

- "the skill required"
- "the source of the instrumentalities and tools"
- "the location of the work"
- "the duration of the relationship between" Hillstrom and Rehab One
- whether Rehab One had "the right to assign additional projects" to Hillstrom
- the extent of Rehab One's "discretion over when and how long to work"
- "the method of payment"
- Hillstrom's "role in hiring and paying assistants"
- whether the work is part of Rehab One's "regular business"
- "the provision of employee benefits"
- "the tax treatment" of Hillstrom

-16-

Id. at 323–24 (quoting Reid, 490 U.S. at 751–52). We weigh all aspects of the relationship, with no single factor being determinative.

As we have said, Hillstrom entered into an Employment Agreement with Rehab One in 1989. He received no earnings from Rehab One, only stock options. In 1994, HCA, of which Hillstrom was a principal, entered into a Management Agreement with Rehab One. Under the terms of the Management Agreement, HCA was "at liberty to organize and perform [all general management] services [for Rehab One] in the manner HCA considers to be in the best interest of Rehab One, allocating the resources and facilities of Rehab One and HCA in such fashion *as HCA sees fit* from time to time in the reasonable *exercise of its discretion*." Management Agreement at 1–2 (emphasis added). It is almost as if this sweeping delegation of authority to HCA was based on the "right to control the manner and means" language from Darden. The agreement delegated total control to HCA and its principals, making Bradley Hillstrom an independent contractor working for Rehab One, not an employee of Rehab One. While some of the "other" factors support Hillstrom's argument that he was an employee, we determine that the factors favoring the conclusion that Hillstrom was an independent contractor win the day.

The agreement did not designate which of the principals should have what responsibilities or even how much time any of them were required to devote to Rehab One's management. In fact, by the terms of the Management Agreement itself, the HCA physician-principals (Bradley Hillstrom and Clark) continued to practice medicine, but with less time devoted to the practice and "corresponding reductions in their income" while attending to Rehab One's business. Id. at 1. The non-physician HCA principal, Scott Hillstrom, was a "payroll employee" of Rehab One; the physicians were not. Hillstrom did have an office at Rehab One and was assisted by employees paid by Rehab One. But the ultimate control of the job to be done by Hillstrom, the responsibility to assign specific duties to Hillstrom, and the authority

-17-

over the manner in which those duties were to be accomplished were vested in HCA, not Rehab One.

Moreover, the economic circumstances favor the conclusion that Hillstrom was an independent contractor, not an employee. Hillstrom received no compensation at all from Rehab One under the 1994 agreement. Instead, Rehab One paid a Management Fee to HCA, but the agreement did not indicate how—or if—the fee was to be divided among the principals. The agreement did state however, that one—and only one—of the HCA principals, Scott Hillstrom, would actually receive a paycheck from Rehab One, in addition to whatever recompense he may have received from HCA. It appears from the record that Rehab One did pay HCA according to the terms of the agreement, and HCA did transfer money to Rehabilitation Medicine Consultants (RMC), an entity owned by Bradley Hillstrom. But it was RMC that paid Hillstrom and issued him a W-2 form for income tax purposes.

For some of the same reasons, we conclude that Hillstrom did not receive $35,000 in "Basic Annual Earnings" from Rehab One. "Basic Annual Earnings" is undefined in any of the versions of the policy in the record. "Basic Monthly Earnings" is defined, although the definition is slightly different in the 2004-printed version. Under the terms of the policy, an eligible employee's "Basic Monthly Earnings" was to be used to calculate the monthly disability benefits due that employee. Assuming the "monthly earnings" definition may be used to ascertain "annual earnings" for the purpose of determining eligibility for benefits in the first instance, the term is defined as the gross monthly rate of pay (or earnings, in the case of the 2004-printed policy) from Rehab One, exclusive of commissions, bonuses, or any extra compensation. Of course, Rehab One paid Hillstrom nothing. It paid a salary to Scott Hillstrom and a Management Fee to HCA that was the "entire consideration" for Bradley Hillstrom's services under the Management Agreement. Because of HCA and RMC, Hillstrom's "accounting conduits," as he calls them, Br. of Appellant at 62, Hillstrom cannot show he received "pay" or "earnings" of any kind

-18-

from Rehab One. Rehab One was the policyholder of this particular long-term disability policy, not HCA and not RMC.

Hillstrom's second argument for reversal fails.

IV.

For the reasons stated, Hillstrom is ineligible to receive benefits under the long-term disability insurance policy that Phoenix issued to Rehab One. Summary judgment in favor of Kenefick is affirmed. Kenefick's cross-appeal from the District Court's decision on the statute of limitations question is dismissed as moot.

_____