35 F.3d 334
 Robert E. BENNETT, Gene Beckman, Clark Jones, individually
and on behalf of all others similarly situated, Appellants,
v.
SOO LINE RAILROAD COMPANY, a corporation; Soo Line Railroad
Funded Pension Plan; Soo Line Railroad Funded
Pension Plan Committee, Appellees.
 No. 91-3519.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1993.
Decided Sept. 8, 1994.
 
 Counsel who presented argument on behalf of the appellant Michael M. Mulder, argued, Chicago, IL (Thomas R. Meites, Joan H. Burger, Roberta A. Levinson and Lawrence Moloney, on the brief), for appellants.
 Scott W. Johnson, argued, Minneapolis, MN (Douglas J. Heffernan, Paul W. Heiring and Linda S. Svitak, on the brief), for appellees.
 Before WOLLMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Robert Bennett, Gene Beckman and Clark Jones (the "Retirees") sued under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq., to enforce the pension-related terms of an asset purchase agreement. The district court[1] granted summary judgment to the employer, and the Retirees appealed. We remanded the case to the district court for a further ruling. We now affirm.
 
 I.
 
 2
 Bennett, Beckman, and Jones were officers of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company ("Milwaukee Road"). As part of Milwaukee Road's bankruptcy reorganization, the Retirees agreed to a 7% reduction in their salaries for 1982-84 under the terms of a wage reduction agreement. Milwaukee Road agreed to restore the 7% reduction if a future sale of the Milwaukee Road exceeded a certain amount.
 
 
 3
 On February 19, 1985, the court presiding over Milwaukee Road's reorganization approved the sale of the company to Soo Line Railroad Company ("Soo Line"). Soo Line made various "undertakings," or promises, in the Asset Purchase Agreement governing the sale. Among other things, Soo Line promised that "as of the closing" Soo Line would adopt and "assume responsibility as sponsor" of Milwaukee Road's pension plan. Asset Purchase Agreement p 28(a). Paragraph 28(b) of the Asset Purchase Agreement provides:
 
 
 4
 Each Officer of the Milwaukee who becomes an employee of Soo or a subsidiary or affiliate of Soo shall become a participant under the Soo Line Railroad Funded Pension Plan (the "Soo Plan") and be credited with years of Milwaukee service and Milwaukee compensation for the purposes of determining benefits under the Soo Plan. For the period of Milwaukee service, such Officer shall have the option of receiving benefits calculated in accordance with either plan.
 
 
 5
 The final sale price was not determined until sometime after the February 19, 1985, closing. The price was determined to be sufficiently great, however, that on October 10, 1985, the successor corporation to the Milwaukee Road distributed to former Milwaukee Road employees 66% of the amount by which their wages had been reduced. The remaining 34% was distributed on September 30, 1986.
 
 
 6
 Soo Line amended its pension plan on October 29, 1985, to provide that former Milwaukee Road officers became participants in the Soo Line plan as of February 19, 1985. ("Appendix C"). Appendix C provided that the officers would receive credit for the number of years each had worked for Milwaukee Road. It also provided that the officers' compensation base for purposes of calculating pension benefits would include the wages Milwaukee Road had paid them, but would not include the amount by which their wages had been reduced under the wage reduction agreement.[2]
 
 
 7
 The Retirees became Soo Line employees. One retired before the adoption of Appendix C; the other two retired afterward. They sued, individually and on behalf of all others similarly situated, to compel Soo Line to include the 7% reduction in their earnings for purposes of calculating pension benefits.
 
 
 8
 Soo Line moved for summary judgment on the alternative grounds that 1) the Asset Purchase Agreement was not part of the Soo Line pension plan and thus not enforceable under ERISA, and 2) that the post-sale payments did not constitute "Milwaukee compensation" as that term is used in the Asset Purchase Agreement. The district court granted the motion on the first ground, and thus did not address the question of the interpretation of "Milwaukee compensation."
 
 
 9
 The Retirees appealed, arguing, among other things, that the Asset Purchase Agreement was part of the Soo Line plan, or a contract to modify the plan, and that Soo Line had breached the terms of the plan.
 
 
 10
 Following oral argument, we remanded the case to the district court for a determination of the meaning of the term "Milwaukee compensation" as set forth in Paragraph 28(a) of the Asset Purchase Agreement.
 
 
 11
 On remand, the district court[3] found that the term "Milwaukee compensation" as used in Paragraph 28 of the Asset Purchase Plan means "compensation" as defined in the Milwaukee Road Pension Plan and concluded that the Retirees' pensionable compensation does not include the retroactive wage payments made in 1985 and 1986.[4]
 
 II.
 
 12
 A beneficiary of a plan may sue "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. Sec. 1132(a)(1)(B). Thus, the Retirees may sue on the basis of the language within the Asset Purchase Agreement only if that Agreement is part of Soo Line's pension plan. The Retirees contend that the Asset Purchase Agreement is either part of Soo Line's pension plan or an enforceable contract to modify that plan.
 
 
 13
 For the purposes of this appeal, we will accept the Retirees' contention that the Asset Purchase Agreement is a part of Soo Line's pension plan. Thus, we need not address the close legal questions presented by this contention, see, e.g., United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp., 961 F.2d 1384 (8th Cir.1992); Alday v. Container Corp. of Am., 906 F.2d 660 (11th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991), nor need we address the even closer questions presented by the contention that the Asset Purchase Agreement constituted an enforceable contract to modify the Soo Line plan. See, e.g., Anderson v. John Morrell & Co., 830 F.2d 872 (8th Cir.1987).
 
 III.
 
 14
 The Milwaukee Road Pension Plan defines "compensation" for any calendar month as
 
 
 15
 the total compensation paid or accrued during such calendar month by the Company to such Employee as payment for services rendered, including bonuses and commissions, but excluding irregular payments (such as those for moving expenses, payment in lieu of vacation, etc.), benefits under the Plan and any contribution or payments by the Company to any other trust, fund or plan to provide retirement, pension, profit-sharing, health, welfare, death, insurance or similar benefits to or on behalf of such Employee.
 
 
 16
 Milwaukee Road Pension Plan, section 1.13.
 
 
 17
 The district court held that "Milwaukee compensation" must be defined in the context of the Asset Purchase Agreement and not on the basis of the dictionary definition of "compensation," reasoning that the latter interpretation could necessarily involve the determination of the value of employer-provided medical and dental benefits, pension and profit sharing contributions, employer-provided life insurance, railroad passes, moving expenses, reimbursed educational expenses, and the like, a computation that would require the reconstruction of some ten years' worth of records for hundreds of former Milwaukee Road employees. As the district court pointed out, the Soo Line Pension Committee interpreted "Milwaukee service" to mean a period of service as defined in the Milwaukee Road Pension Plan, an interpretation not challenged by the Retirees. That "service" and "compensation" are both qualified by the term "Milwaukee," the district court reasoned, manifests a clear intention that the two terms be treated consistently, with the result that it would be unreasonable for the Retirees or the Pension Committee to pick and choose which terms should be defined in accordance with the Milwaukee Road Pension Plan and which should be given a dictionary meaning.
 
 
 18
 The district court found that the Retirees did not have a fixed or unconditional right to receive the wage reduction amounts in 1982, 1983, or 1984, nor were those amounts due and payable at any time during those three years. Rather, the wage reduction amounts were, by the terms of the wage reduction agreement, contingent in nature. The Retirees' right to receive a refund of their reduced wages was conditioned on an event that was not certain to occur--the sale of the Milwaukee Road at a price sufficient to entitle the Retirees to a restoration of their reduced wages. The district court therefore concluded "that by no stretch of the imagination can the [Retirees'] right to the 7 percent wage reduction be deemed to have 'accrued' in 1982, 1983 or 1984."
 
 
 19
 We agree with the district court's interpretation of "Milwaukee compensation," and so without further discussion we adopt the analysis and reasoning contained in the district court's careful, thorough memorandum opinion.
 
 
 20
 We therefore affirm the judgment dismissing this action, although for reasons other than those relied upon by the district court in the first instance. Our holding makes it unnecessary to consider the other issues raised by the appeal.
 
 
 21
 The judgment is affirmed.
 
 
 
 [1]
 The Honorable Edward J. Devitt, late a Senior United States District Judge for the District of Minnesota
 
 
 [2]
 As to the Retirees' contention that Soo Line adopted Appendix C in part to save itself money, we note Soo Line's uncontested assertion that the Retirees currently receive pension benefits between 50% and 100% greater than what they would be entitled to had they remained under the Milwaukee Road plan
 
 
 [3]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota
 
 
 [4]
 The district court found that the Soo Line Plan gives the Soo Line Pension Committee discretion to determine eligibility for benefits as well as discretion to construe the terms of the plan. Accordingly, the district court applied the deferential abuse-of-discretion standard of review to the Committee's interpretation of "Milwaukee compensation." See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). The district court also noted, however, that it would have reached the same conclusion had it applied a de novo standard of review