Thomas **KRACHT**, Plaintiff,

v.

**AALFS ASSOCIATES H.C.P., Health Care Plan of Aalfs Manufacturing Company,** Defendant.

No. C 94–4025.

United States District Court, N.D. Iowa, Western Division.

Oct. 17, 1995.

Redge Berg of Berg & Howe in Spencer, Iowa, for Plaintiff Thomas Kracht.

Maureen Heffernan and Douglas Hodgson of Berenstein, Moore, Moser, Berenstein & Heffernan in Sioux City, Iowa, for Defendant Aalfs Associates H.C.P., Health Care Plan of Aalfs Manufacturing Company.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND .................... 607

II. STANDARDS FOR SUMMARY JUDGMENT ............................. 608

III. FINDINGS OF FACT ........................................... 610
    A. Undisputed Facts ....................................... 610
    B. Disputed Facts ......................................... 611

IV. LEGAL ANALYSIS ............................................. 611
    A. Standard Of Review ..................................... 611
    B. Pre-existing Condition Analysis ........................ 613
    C. Pre-Certification For Kracht's Surgery ................. 617

V. CONCLUSION ................................................. 618

This litigation raises a troublesome issue in which forty-eight hours determines whether Plaintiff or his former employer's health care plan must pay more than $50,000 in medical expenses resulting from Plaintiff's traumatic battle with cancer. This case further demonstrates that "[h]ow one wishes to decide a case comes lightly to mind, on a wing; but often how one must decide it comes arduously, weighed down by somber thought." *Curtis 1000, Inc. v. Youngblade*, 878 F.Supp. 1224, 1232 (N.D.Iowa 1995) (quoting *Letelier v. Republic of Chile*, 748 F.2d 790, 791 (2d Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985)). Defen-

dant has moved for summary judgment, claiming Plaintiff's cancer was a pre-existing condition that was present when Plaintiff received advice and treatment for symptoms resulting from his cancer on May 30, 1991, forty-eight hours prior to the effective date of his coverage under Defendant's health care plan, even though Plaintiff's condition was incorrectly diagnosed as epididymitis at this time. On the other hand, Plaintiff argues he did not receive advice or treatment for cancer and was not diagnosed with cancer on May 30, 1991. Rather, Plaintiff claims he was not diagnosed with cancer until June 7, 1991, six days after the date of his coverage under Defendant's health care plan commenced. Therefore, Plaintiff argues there is a genuine issue of material fact regarding whether Plaintiff's cancer was a pre-existing condition as defined in Defendant's health care plan, thereby excluding him from coverage under this health care plan and forcing him to endure the hardship of paying for medical expenses from his cancer.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Thomas Kracht filed a complaint in state court on February 18, 1994, alleging he has suffered damage as a result of the defendant's refusal to pay him medical expense benefits that he claims were provided for and covered under the terms of his health care plan. Defendant Aalfs Associates H.C.P., Health Care Plan of Aalfs Manufacturing Company ("Aalfs") filed a notice of removal in federal court on March 14, 1994, removing this case from state court to the federal district court in the Northern District of Iowa. Aalfs removed this case because Kracht's complaint states a cause of action arising under 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act of 1974 ("ERISA") and pertains to benefits

due under an employee welfare benefit plan. Also, on March 14, 1994, Aalfs filed its answer to Kracht's complaint, denying Kracht's allegations and raising two affirmative defenses. In Aalfs' first defense, Aalfs alleged Kracht has failed to exhaust all of his administrative remedies as required under 29 U.S.C. § 1001 et seq. and under the terms of the medical benefits program administered by Aalfs. (Answer, p. 1.). In its second affirmative defense, Aalfs argues Kracht was not entitled to coverage for all of his medical expenses because some of his expenses were not covered under the medical benefits program administered by Aalfs. (Answer, p. 2.).

On July 28, 1995, Aalfs filed a motion for summary judgment, claiming that Kracht's medical expenses are not covered under Aalfs' health care plan because Kracht incurred these expenses for a pre-existing condition, which is excluded from Aalfs' health care plan. Kracht's coverage under Aalfs' health care plan became effective on June 1, 1991. Aalfs argues that although Kracht's medical condition was not correctly diagnosed until June 7, 1991, the condition was present on May 30, 1991, and Kracht received medical advice and treatment on May 30, 1991. Because Kracht received this advice and treatment for a condition in existence before his coverage under Aalfs' health care plan was effective, Aalfs asserts this condition is a pre-existing condition. Furthermore, because this condition is a pre-existing condition, the expenses for the treatment of this condition are excluded from Aalfs' health care plan. To supplement its motion for summary judgment, Aalfs also filed a memorandum in support of summary judgment, a statement of undisputed material facts, and the affidavits of Melanie Nieman,[1] Rhonda Camarigg,[2] and Dr. Gregg M.

---

1. Melanie Nieman is the Director of Human Resources for the defendant, Aalfs Manufacturing Company. In her capacity as director of human resources, she is familiar with the terms of Aalfs' health care plan and associated documents.

2. Rhonda Camarigg is employed by Aalfs Manufacturing Company and is familiar with the coverage which was in effect for Thomas Kracht while he was employed by Aalfs. Camarigg con-

firmed the effective date of Kracht's insurance coverage, June 1, 1991. Camarigg also noted when Kracht terminated his employment with Aalfs to take other employment, Kracht received a notice giving him the option to continue health care coverage under Aalfs' health care plan. Kracht did not continue this health care coverage, and Kracht's coverage was terminated on September 30, 1993.

Galloway.[3] On July 31, 1995, Aalfs moved for a hearing on its motion for summary judgment. This hearing was subsequently scheduled for October 12, 1995.

On August 25, 1995, Kracht responded to Aalfs' motion for summary judgment, arguing there are material facts in dispute regarding whether the medical advice and treatment Kracht received pertained to a pre-existing condition, thereby barring his recovery of medical expenses. Specifically, Kracht argues his expenses did not relate to a pre-existing condition, existing before June 1, 1991. Rather, his medical expenses relate to his treatment for cancer, for which he alleges he began to receive treatment on June 7, 1991. On May 30, 1991, Kracht argues he was diagnosed as having epididymitis involving the left testicle and treated for this condition. On the other hand, on June 7, 1991, Kracht was diagnosed as having testicular cancer and received different treatment for this condition promptly. Because Kracht alleges he was never advised or treated regarding his testicular cancer before June 1, 1991, he argues his medical expenses do not relate to a pre-existing condition and are covered under Aalfs' health care plan. To support his resistance to Aalfs' motion for summary judgment, Kracht also filed an argument in support of resistance to motion for summary judgment and a response to Aalfs' statement of undisputed material facts.

On October 12, 1995, a hearing was held regarding Aalfs' motion for summary judgment. Aalfs was represented by Maureen Heffernan and Douglas Hodgson, Berenstein, Moore, Moser, Berenstein & Heffernan, Sioux City, Iowa. Kracht was represented by Redge Berg, Berg and Howe, Spencer, Iowa. On the day of the hearing, Kracht filed an affidavit in support of his resistance to Aalfs' motion for summary judgment. In this affidavit, Kracht stated his fiancee ob-

tained pre-certification and approval in accordance with the terms of Aalfs' health care plan for his surgery for testicular cancer on June 7, 1991.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be ren-*

---

**3.** Dr. Gregg Galloway is a physician specializing in pathology at Marian Health Center in Sioux City, Iowa. Dr. Galloway reviewed the tissue slides and pathology reports provided by the Mayo Clinic regarding Kracht's treatment for testicular cancer. Based on these reports and Kracht's medical records as a whole, Galloway concluded the symptoms Kracht presented to Dr. Kelly on May 30, 1991 were consistent with and related to the testicular cancer which was diag-

nosed on June 7, 1991. Galloway further stated it was his opinion to a reasonable degree of medical certainty that Kracht's cancer was a pre-existing condition on June 1, 1991 for which Kracht received medical advice and treatment on May 30, 1991. In addition, Dr. Galloway opined Kracht's signs and symptoms of epididymitis tentatively diagnosed on May 30, 1991, were a complication of and secondary to the underlying and pre-existing testicular cancer.

*dered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[4] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Kracht, and give Kracht the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, Aalfs, bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Aalfs is not required by

*Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56. Kracht is required under *Rule* 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial

4. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Kracht fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Aalfs is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247. With these standards in mind, the court turns to consideration of Aalfs' motion for summary judgment and Kracht's resistance.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

The undisputed facts in this litigation are simple yet compelling. As an employee of Aalfs Manufacturing Company, Kracht received the opportunity to obtain coverage under Aalfs' health care plan. This coverage became effective on June 1, 1991. The health care plan contained an exclusion for medical expenses incurred for a pre-existing condition. This exclusion provided as follows:

If a Covered Participant has a pre-existing medical condition for which medical advice or treatment was received, or for which treatment was recommended by a physician, during the twelve month period before the effective date of the medical coverage, the Participant must go treatment-free for that condition for twelve months after the day coverage begins. That condition will then be covered under this plan.

If a Covered Participant does not go treatment-free for twelve months, that condition will not be covered under this plan until twenty-four months after the effective date.

(Affidavit of Melanie Nieman, Exhibit 1, p. 8–9.). The term "pre-existing condition" was defined in the health care plan as "an injury or illness for which medical advice or treatment was provided or recommended by a physician during the waiting period specified [in the health care plan]." (Affidavit of Melanie Nieman, Exhibit 1, p. 8.).

On May 30, 1991, Kracht saw Dr. J.E. Kelly, a physician, who subsequently diagnosed Kracht as having epididymitis involving the left testicle. Dr. Kelly's diagnosis of Kracht's condition proved to be incorrect. On June 7, 1991, Kracht saw Dr. Walter Mendenhall, a urologist, who correctly diagnosed Kracht's condition as testicular cancer. Dr. Mendenhall immediately ordered surgery for Kracht, and on that same day, Kracht underwent a radical orchiectomy[5] of the left testicle. Dr. Mendenhall referred Kracht to the Mayo Clinic for further consultation and treatment. The doctors at the Mayo Clinic determined Kracht's cancer had spread to his lymph nodes and prescribed chemotherapy for Kracht.

Both Kracht and Aalfs agree the medical expenses Kracht is claiming under Aalfs' health care plan are related to his treatment for testicular cancer of the left testicle. Aalfs denied coverage for these medical expenses on the basis that they were incurred for a pre-existing condition as defined under the terms of the health care plan. When Kracht terminated his employment with Aalfs to take other employment, Kracht received a notice giving him the option to continue health care coverage under Aalfs' health care plan. Kracht did not continue this health care coverage, and Kracht's insurance coverage under Aalfs' health care plan terminated on September 30, 1993.

---

5. An orchiectomy is the removal of one or both testes. Stedman's Medical Dictionary 1257 (26th ed. 1995).

## B. Disputed Facts

The following facts are among those disputed by the parties. Aalfs argues Kracht told Dr. Mendenhall he had experienced four weeks of discomfort and swelling in the left testicle on June 7, 1991. In addition, Aalfs argues these symptoms of discomfort and swelling Kracht communicated to Dr. Mendenhall on June 7, 1991, were the same symptoms Kracht relayed to Dr. Kelly on May 30, 1991. Kracht disputes these allegations, arguing that he never told Dr. Mendenhall that he had experienced four weeks of discomfort and swelling in his left testicle, and that his symptoms on May 30, 1991, were not the same symptoms he exhibited on June 7, 1991. Therefore, Kracht asserts these alleged symptoms from his May 30, 1991 appointment with Dr. Kelly could not be related to Kracht's cancer as diagnosed by Dr. Mendenhall on June 7, 1991.

Furthermore, Kracht disputes that Dr. Kelly and Dr. Mendenhall treated Kracht for the same condition even though Dr. Kelly's initial diagnosis was incorrect. Kracht argues Dr. Kelly diagnosed and treated Kracht for epididymitis, whereas Dr. Mendenhall diagnosed and treated Kracht for testicular cancer. Kracht also disputes that his surgery confirmed the presence of cancer involving the testes along with the epididymis and proximal cord. Rather, Kracht argues none of the epididymitis was involved with the cancer, according to the pathology report completed after Kracht's surgery. Lastly, Kracht disputes that his cancer had become active before June 7, 1991. On the contrary, Kracht maintains the medical expenses he is claiming under Aalfs' health care plan are expenses incurred in the treatment of his testicular cancer first found and treated by Dr. Mendenhall on June 7, 1991. The court will weigh the materiality of these disputed facts in reaching its decision regarding Aalfs' motion for summary judgment.

## IV. LEGAL ANALYSIS

In evaluating Aalfs' motion for summary judgment, the court must analyze the decision of the administrator of Aalfs' health care plan to deny Kracht benefits pursuant to the terms of the plan. Kracht argues the administrator of Aalfs' health care plan erred in determining that Kracht's cancer was a preexisting condition that was present when Kracht saw Dr. Kelly on May 30, 1991, forty-eight hours prior to the effective date of his coverage under Aalfs' health care plan. Kracht claims he was not treated or advised for cancer prior to June 1, 1991, the date his insurance at Aalfs became effective; therefore, his condition was not a pre-existing condition. Therefore, Kracht asserts the administrator's decision to deny him coverage under Aalfs' health care plan on this ground was arbitrary and capricious.

On the other hand, Aalfs asserts the administrator's decision was not arbitrary and capricious because Kracht had the same symptoms on May 30, 1991, when he visited Dr. Kelly, that he exhibited on June 7, 1991, upon his examination by Dr. Mendenhall. Consequently, Aalfs argues but for Dr. Kelly's misdiagnosis, Kracht would have been diagnosed with cancer and advised and treated for his cancer on May 30, 1991. Aalfs asserts Dr. Kelly's misdiagnosis of Kracht's condition as epididymitis does not alter the fact that Kracht's testicular cancer was a pre-existing condition that was in existence before June 1, 1991, and Kracht received advice and treatment for this condition before June 1, 1991, albeit incorrect advice and treatment. Because Kracht's medical expenses relate to a pre-existing condition for which Kracht received treatment and advice prior to the effective date of his insurance coverage, Aalfs argues Kracht's medical expenses are excluded from Aalfs' health care plan. The court will now determine the standard of review that governs the denial of Kracht's benefits under Aalfs' health care plan.

## A. Standard of Review

In their briefs, both parties have asserted that an "arbitrary and capricious" standard applies to the denial of Kracht's benefits under Aalfs' health care plan. The Supreme Court has held a denial of benefits challenged under 29 U.S.C. 1132(a)(1)(B) should be reviewed under a *de novo* standard unless the health care benefit plan in question gives the health care plan "administrator

or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *see also Lickteig v. Business Men's Assur. Co. of America,* 61 F.3d 579, 583 (8th Cir.1995); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.1995); *Bennett v. Soo Line R. Co.,* 35 F.3d 334, 336 n. 4 (8th Cir.1994); *Bounds v. Bell Atlantic Enters. Flexible Long–Term Disability Plan,* 32 F.3d 337, 339 (8th Cir.1994); *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 (8th Cir.1994); *Collins v. Central States, S.E. & S.W. Areas Health and Welfare Fund,* 18 F.3d 556, 558 (8th Cir.1994); *Kirk v. Provident Life & Accident Ins. Co.,* 942 F.2d 504, 505 (8th Cir.1991); *Oldenburger v. Central States S.E. & S.W. Areas Teamster Pension Fund,* 934 F.2d 171, 173 (8th Cir.1991); *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 153 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). If the health care plan administrator has such discretionary authority, the Eighth Circuit has stated a denial of benefits is then reviewed under an "arbitrary and capricious" standard. *Stock v. SHARE,* 18 F.3d 1419, 1422 (8th Cir.1994); *Collins,* 18 F.3d at 559; *Oldenburger,* 934 F.2d at 173. Pursuant to this standard, the health care plan administrator's decision will be upheld unless there has been an abuse of discretion. *Id.; see also Lickteig,* 61 F.3d at 583; *Lutheran Medical Ctr.,* 25 F.3d at 621 (quoting *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), in turn, quoting George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 560 at 201–04 (rev. 2d ed. 1980)). Prior to making a determination of whether there has been an abuse of discretion, the court must first determine whether Aalfs had discretionary authority to determine eligibility for benefits under the health care plan or to construe the terms of the plan.

■ Within Aalfs' health care plan, the administrator of the plan has the discretionary authority to determine whether expenses were "usual, customary, and reasonable" so that they may be considered "covered expenses." (Affidavit of Melanie Nieman, Exhibit 2, p. 4.). In addition, the administrator has the power to review claims submitted during the waiting period and investigate conditions which appeared to be "pre-existing conditions." (Affidavit of Melanie Nieman, Exhibit 2, p. 9.). The administrator also has sole discretion to determine whether a plan participant has incurred a covered expense or whether a benefit is covered under the plan. (Affidavit of Melanie Nieman, Exhibit 2, p. 35.). Furthermore, under the terms of the plan, the committee has all authority and responsibility for the administration and interpretation of the plan. (Affidavit of Melanie Nieman, Exhibit 2, p. 10.). Every action and determination of the committee shall be final and binding on each participant. In addition, the committee may appoint another plan administrator and may delegate duties necessary to the administration and interpretation of the plan as it deems necessary and appropriate, including matters involving the exercise of discretion. (Affidavit of Melanie Nieman, Exhibit 2, p. 37.). The committee also has the specific responsibility to construe and interpret the health care plan and determine all questions arising in its operation. (Affidavit of Melanie Nieman, Exhibit 2, p. 37.). Each of these provisions within Aalfs' health care plan indicates that Aalfs had discretionary authority to control the administration of its health care plan, including whether Kracht had a pre-existing condition, thereby precluding his entitlement to benefits.

■ After concluding that Aalfs had discretionary authority to control the administration of its health plan, the court must determine whether Aalfs' denial of benefits was an abuse of discretion. "The [administrator's] decision to deny benefits will be deemed an abuse of discretion if the action is 'extraordinarily imprudent or extremely unreasonable.'" *Lickteig,* 61 F.3d at 583 (quoting *Lutheran Medical Ctr.,* 25 F.3d at 621, in turn, quoting *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), which further quoted George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 560 at 201–04 (rev. 2d ed. 1980)).

Reviewing Aalfs' interpretation of its plan language requires this court to examine the following factors: (1) whether the interpretation is consistent with the goals of Aalfs' plan; (2) whether it renders any language in Aalfs' plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether Aalfs has interpreted the provisions at issue here consistently; and (5) whether the interpretation is contrary to the clear language of Aalfs' plan. *Lickteig,* 61 F.3d at 584 (citing *Finley v. Special Agents Mut. Benefit Ass'n,* 957 F.2d 617, 621 (8th Cir.1992)); *accord Cooper Tire & Rubber Co.,* 48 F.3d at 371 (following *Finley* ); *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994) (citing *Finley* ); *Lutheran Medical Ctr.,* 25 F.3d at 620 (relying on *Finley* ); *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1438 (8th Cir.1993) (applying the five *Finley* factors). Therefore, the court will apply the "abuse of discretion" standard of review and uphold the decision of Aalfs to deny Kracht benefits unless its decision was extraordinarily imprudent or extremely unreasonable. With this standard in mind, the court turns to the task of determining whether Kracht's medical expenses are excluded from Aalfs' health care plan because they are related to a pre-existing condition.

### B. Pre-existing Condition Analysis

Kracht argues his testicular cancer, diagnosed on June 7, 1991, was not a pre-existing condition under the terms of Aalfs' health care plan; therefore, he should be entitled to coverage under the plan, and the administrator's decision to deny him this coverage was an abuse of discretion. On the contrary, Aalfs asserts that Kracht's testicular cancer was present on May 30, 1991, forty-eight hours before Kracht's effective date of insurance coverage, and Kracht's cancer manifested itself through symptoms for which Kracht was advised and treated on May 30, 1991. To ascertain whether this cancer does, in fact, meet the definition of a "pre-existing condition," the court finds it necessary to examine the relevant case law before determining whether the terms within Aalfs'

health care plan define Kracht's medical expenses as relating to a pre-existing condition.

To understand the terms of Aalfs' health care plan, the court must engage in contract interpretation. Because federal law occupies the field of rights and obligations under ERISA-regulated health care benefits plans, the courts must "develop and apply a federal common law of contracts to determine those rights and obligations." *Pitcher v. Principal Mut. Life Ins. Co.,* 870 F.Supp. 903, 907 (S.D.Ind.1994) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987)); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993). While not dispositive, state law can be used as a guide for fashioning the federal common law applicable to ERISA, provided the state law provisions are not contrary to the dictates of ERISA. *Kirk,* 942 F.2d at 505; *Brewer,* 921 F.2d at 153; *Whiteside v. Metropolitan Life Ins. Co.,* 798 F.Supp. 1380, 1389 (D.Minn.1992).

Furthermore, pursuant to ERISA, an administrator of a health care plan is required to furnish plan descriptions "written in a manner calculated to be understood by the average plan participant...." *See Brewer,* 921 F.2d at 154 (citing 29 U.S.C. § 1022(a)(1)). The Eighth Circuit further stated that

It would be improper and unfair to allow experts to define terms that were specifically written for and targeted toward laypersons. This requirement provides a source from which we may fashion a federal common law rule; the terms should be accorded their ordinary, and not specialized, meanings. The cause of a disease is a judgment for experts, while laymen know and understand symptoms ... laypersons do not classify illnesses based on their origins. Instead, laypersons are inclined to focus on the symptoms of an illness.

*Brewer,* 921 F.2d at 154. Therefore, the court must give effect to the words of Aalfs' health care benefits plan in light of their plain meaning and, in particular, with a focus on the symptoms Kracht exhibited both before and after the effective date of coverage. *See Brewer,* 921 F.2d at 154; *Bullwinkel v.*

*New England Mut. Life Ins. Co.,* 18 F.3d 429, 431 (7th Cir.1994).

■ If the plain language of the policy does not require a diagnosis in order for the subsequent treatment of the illness to be excluded under the pre-existing condition, the absence of a diagnosis is irrelevant. *McCorkle v. Life Gen. Sec. Ins. Co.,* 830 F.Supp. 1446, 1449 (M.D.Fla.1993) (where the policy does not require a diagnosis but merely requires symptoms to be present, a diagnosis is not required). Therefore, if the requirements of the "pre-existing condition" definition are present, a diagnosis of the condition prior to the effective date of the policy is not mandatory in addition to the listed requirements in order for the exclusion to apply. *McCorkle,* 830 F.Supp. at 1449; *Kirk,* 942 F.2d at 506 (coverage denied where symptoms were present prior to the effective date of policy but were insufficient to allow an accurate diagnosis at the time); *Fischman v. Blue Cross & Blue Shield of Connecticut, Inc.,* 775 F.Supp. 513, 516 (D.Conn. 1991) (summary judgment granted to insurer on the basis of a pre-existing condition since accurate diagnosis was not required by the plain language of the exclusion clause); *Cury v. Colonial Life Ins. Co. of America,* 737 F.Supp. 847, 854 (E.D.Pa.1990) (patient's knowledge of actual diagnosis, and definite medical diagnosis of illness is not necessary in order for illness to fall within pre-existing condition exclusion). Furthermore, where the policy does not specifically require a diagnosis, a *correct* diagnosis of a claimant's true condition is immaterial. *Life Gen. Sec. Ins. Co. v. Cook,* 648 So.2d 237, 239 (Fla.Dist. Ct.App.1994) (where insured claims she was not diagnosed for Crohn's disease until after the policy became effective and nothing in the policy requires an accurate diagnosis, treatment for the same symptoms prior to the effective date of the policy relates to a pre-existing condition).

■ Where a claimant receives advice or treatment prior to the commencement of his insurance coverage for a condition which proves to be the same condition the claimant seeks benefits for after the effective date of coverage, a diagnosis is not required to meet the definition of a "pre-existing condition."

*Mannino v. Agway Inc. Group Trust,* 192 A.D.2d 131, 600 N.Y.S.2d 723, 727 (1993) (plaintiff had received medical advice prior to the effective date of the policy, but no disease had yet been diagnosed and the advice was not given for any symptom of the disease (leukemia) for which the claimant sought coverage); *Bartlett v. American Republic Ins. Co.,* 845 S.W.2d 342, 347 (Tex.Ct.App.1992) (diagnosis not required to meet the definition of a pre-existing condition); *Hannum v. General Life & Accident Ins. Co.,* 745 S.W.2d 500, 501 (Tex.Ct.App.1988) ("the fact that doctors did not make a diagnosis ... before the effective date of the policy does not alter the definition of pre-existing condition, nor does it change the nature of a pre-existing condition"); *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 354, 361, 723 P.2d 703, 710 (App.1985) (jury instruction that insurer was not obligated to pay medical expenses incurred by claimant because of a pre-existing condition if dependent insured had cancer, whether diagnosed or not, and if dependent insured received medical care or treatment for cancer or symptom caused by cancer during 90–day period before effective date of coverage and that medical care and treatment included examinations and diagnosis as well as application of remedies, was proper); *Dirgo v. Associated Hospitals Serv., Inc.,* 210 N.W.2d 647, 649 (Iowa 1973) (under Iowa law, where a claimant exhibits symptoms and has an illness before the effective date of coverage, the illness need not be diagnosed before it may be said to be a pre-existing condition). Under a health care plan provision excluding coverage for expenses incurred due to a preexisting condition, an illness is generally "deemed to have its inception when it first manifests itself, becomes active or when sufficient symptoms exist to allow a reasonably accurate diagnosis by a doctor." *Clark v. Golden Rule Ins. Co.,* 887 F.2d 1276, 1279 (5th Cir.1989); *Doe v. Northwestern Nat'l Life Ins. Co.,* 355 S.E.2d 867, 869 (S.C.Ct.App.1987). Furthermore, an illness does not necessarily manifest itself when it is diagnosable. *American Sun Life Ins. Co. v. Remig,* 482 So.2d 435, 436 (Fla. Dist.Ct.App.1985) (a condition is "manifest" when the insured knew or should have known of the existence of his illness because he was

experiencing symptoms that would lead a reasonable person to seek a medical diagnosis); *Arkansas Blue Cross & Blue Shield, Inc. v. Fudge,* 12 Ark.App. 11, 669 S.W.2d 914, 916 (1984) (where claimant had a medical condition and sought and received treatment prior to the effective date, the fact that the condition was not allegedly diagnosed as requiring surgery until after claimant was admitted to the hospital was immaterial to the determination of whether condition was a pre-existing condition); *Preferred Risk Life Ins. Co. v. Sande,* 421 So.2d 566, 569 (Fla.Ct. App.1982) (illness manifested itself prior to the effective date of the policy where the symptoms were clearly present in the claimant and a complete diagnosis of the problem could have been made had the claimant gone to the specialist prior to the policy date); *Dirgo,* 210 N.W.2d at 651 (under Iowa law, "symptoms may be present and may have progressed sufficiently that an illness is said to exist before it has been medically designated by its proper name").

Aalfs cited *Kirk v. Provident Life and Accident Ins. Co.,* 942 F.2d 504 (8th Cir. 1991), as supporting its proposition that an accurate diagnosis is irrelevant in the determination of whether Kracht has a pre-existing condition as defined in Aalfs' health care plan. In that case, Kirk was treated for several symptoms which led his doctor to believe Kirk might have congenital heart disease. *Id.* at 505. However, a blood culture which might have detected a congenital heart disease showed no signs of such a disease. *Id.* Subsequently, Kirk acquired an insurance policy which contained a pre-existing condition exclusion. *Id.* After he obtained this policy, Kirk once again exhibited the same symptoms. *Id.* at 506. Following this particular manifestation of symptoms, a heart specialist diagnosed the disease as bacterial endocarditis, a heart ailment. *Id.* The heart specialist, along with a specialist in infectious diseases, both opined the disease had been present before the effective date of insurance coverage. *Id.* The Eighth Circuit Court of Appeals held that a claimant who exhibits symptoms and seeks treatment for these symptoms before the effective date of coverage for a disease which he later seeks coverage for after the effective date of cover-

age does suffer from a pre-existing condition. *Id.* Therefore, the claimant cannot recover medical expenses pertaining to this pre-existing condition. *Id.*

In *Bullwinkel v. New England Mut. Life Ins. Co.,* 18 F.3d 429 (7th Cir.1994), the Seventh Circuit reached a similar conclusion as the Eighth Circuit reached in *Kirk.* In *Bullwinkel,* the court examined the insurance policy language and confronted the issue of whether a malignant breast lump, discovered before the effective date of an insurance policy but not definitely diagnosed as cancer until after coverage commenced, was an injury or condition for which the claimant was "seen, treated, diagnosed, or incurred medical expenses" prior to the effective coverage date. *Id.* at 432. The court concluded that although the claimant was not seen, treated, and diagnosed specifically for breast cancer prior to the effective date of coverage, she was seen, treated, diagnosed and incurred medical expenses for a breast lump prior to the effective coverage date, which ultimately was diagnosed as cancer. *Id.* The court opined that even though the claimant was not diagnosed with cancer until after the effective date of coverage, the cancer was likely present prior to the effective coverage date. *Id.* Therefore, the court concluded any post-policy treatment concerning the same condition was not covered by the insurance policy.

Kracht asserts he was not treated or advised for cancer prior to June 1, 1991, the date his insurance at Aalfs became effective. Kracht maintains he did not have the same symptoms on May 30, 1991, when he visited Dr. Kelly, that he exhibited on June 7, 1991, upon his examination by Dr. Mendenhall. Kracht further argues he never told Dr. Kelly of these symptoms and did not tell Dr. Mendenhall that he had been suffering from these symptoms for four weeks prior to June 7, 1991. However, according to Dr. Kelly's records, Kracht exhibited symptoms of pain and swelling involving the left testicle on May 30, 1991. Aalfs maintains these symptoms of pain and swelling were the same symptoms that Kracht exhibited upon his visit to Dr. Mendenhall on June 7, 1991. In addition, Dr. Mendenhall reported in his records Kracht complained he suffered these

symptoms for four weeks prior to the June 7, 1991 appointment. This dispute regarding whether Kracht's symptoms on May 30, 1991, and June 7, 1991, were the same may create a material fact question; however, this dispute does not alter the undisputed fact that Kracht did have testicular cancer on May 30, 1991. Kracht's medical records and his test results at the Mayo Clinic reveal that his cancer had metastasized by May 30, 1991, and his cancer was the source of his problems on May 30, 1991. Kracht himself admits that Dr. Kelly "misdiagnosed" Kracht on May 30, 1991, treating him for epididymitis rather than for testicular cancer. Regardless of whether Kracht admits he suffered the same symptoms on both May 30, 1991, and June 7, 1991, Kracht has failed to generate a material question of fact regarding whether his cancer was in existence on May 30, 1991.

Furthermore, the court recognizes Dr. Kelly misdiagnosed Kracht's testicular cancer of the left testicle, and instead concluded Kracht suffered from epididymitis involving the left testicle. However, Kracht never had epididymitis. In his deposition, Dr. Mendenhall testified based on the cancer found on June 7, 1991, Kracht must have had testicular cancer for at least four weeks prior to June 7, 1991. This opinion corroborates Kracht's complaints of symptoms of pain and swelling for approximately four weeks prior to June 7, 1991, to Dr. Mendenhall. In addition, both Dr. Mendenhall and Dr. Galloway, Aalfs' expert witness, opined that Kracht had testicular cancer for at least four weeks prior to June 7, 1991; therefore, Kracht did have testicular cancer when he saw Dr. Kelly on May 30, 1991. Consequently, but for Dr. Kelly's misdiagnosis, Kracht would have been diagnosed with cancer and advised and treated for his cancer on May 30, 1991.

Kracht maintains, however, that on May 30, 1991, he did not receive advice or treatment for cancer pursuant to the definition of "pre-existing condition" in the Aalfs' health care plan. Rather, Dr. Kelly gave him advice and treatment for epididymitis. Therefore, Kracht argues that his cancer, as diagnosed on June 7, 1991, was not a pre-existing condition under the terms of Aalfs' health care plan because he did not receive advice and treatment regarding his cancer before June 1, 1991, the effective date of coverage. However, the pertinent question is whether Kracht's symptoms on May 30, 1991, for which he was misdiagnosed and subsequently received incorrect treatment and advice before the effective date of coverage, represented the existence of an injury or illness for which Kracht received advice or treatment prior to the effective coverage date. Kracht did receive advice and treatment for his symptoms of pain and swelling in the left testicle on May 30, 1991. However, this advice and treatment was incorrect because Dr. Kelly's initial diagnosis was incorrect. Dr. Kelly recommended that Kracht see Dr. Mendenhall, a urologist, for these symptoms when the symptoms did not subside. On June 7, 1991, Dr. Mendenhall determined these same symptoms indicated that Kracht did not have epididymitis, but rather had testicular cancer. Dr. Mendenhall opined that Dr. Kelly incorrectly diagnosed Kracht's symptoms; however, Dr. Mendenhall testified in his deposition that inflammation of the type of tumor Kracht had often causes discomfort for the claimant and "often causes the initial misdiagnosis by people who are not specialists in the field of urology when they examine this." (Def.'s Statement of Undisputed Material Facts, Exhibit 2, p. 29.). Furthermore, Dr. Mendenhall testified if he had seen Kracht on May 30, 1991, instead of Dr. Kelly, he would have recognized Kracht's symptoms as indicative of testicular cancer. Based on Dr. Mendenhall's testimony, Dr. Kelly's records, and Kracht's patient history and medical records, the court concludes Kracht clearly fails to generate a material question of fact regarding whether his cancer was present on May 30, 1991, before the effective date of Kracht's coverage under Aalfs' health care plan.

To defeat Aalfs' motion for summary judgment, Kracht had to set forth specific facts showing there was a genuine issue whether he incurred his medical expenses as a result of a pre-existing condition. *See Marshall v. UNUM Life Ins. Co.,* 13 F.3d 282, 284 (8th Cir.1994); *Green v. St. Louis Housing Auth.,* 911 F.2d 65, 68–69 (8th Cir.1990). Kracht has failed to make this showing. Based on

the testimony and records of the physicians who treated Kracht, the affidavits presented by Aalfs, and Kracht's medical history, the court concludes Kracht's cancer is a pre-existing condition, as defined by Aalfs' health care plan. Kracht has not refuted the evidence presented by Aalfs or the evidence offered by Kracht himself in the form of Dr. Mendenhall's testimony. Therefore, the court concludes there is no genuine question of material fact regarding whether Kracht incurred his medical expenses as a result of a pre-existing condition. Having determined this issue, the court turns next to the question of whether Kracht's compliance with Aalfs' pre-certification procedures prevents Aalfs from excluding Kracht from its plan due to a pre-existing condition.

### C. Pre–Certification For Kracht's Surgery

Kracht asserts in an affidavit dated October 12, 1995, that his fiancee received pre-certification and approval for Kracht's emergency surgery on June 7, 1991, in accordance with the terms of Aalfs' health care plan. Therefore, Kracht argues because Kracht received pre-certification and approval for his testicular cancer surgery, the administrator's decision to deny benefits after Kracht submitted his medical benefits was arbitrary and capricious. In Aalfs' health care plan, the provision addressing the hospital preadmission certification program provides as follows:

> A Hospital Preadmission Certification Program is an administrative procedure that will benefit you and your family by making sure you are receiving appropriate care in the event of hospitalization. When your physician recommends that you or your dependent be hospitalized, you or your physician must telephone the Utilization Review Coordinator at Intracorp.... You are responsible for obtaining the Hospital Preadmission Certification. You may ask your physician or hospital staff to obtain it for you. However, it is your responsibility to make certain it is done. All admissions including maternity admissions must be certified. Urgent or emergency admission certifications must be requested by telephone within two (2) working days *after* the admission.

(Affidavit of Melanie Nieman, Exhibit 2, p. 11.). Kracht argues he complied with this provision within two working days after his admission for surgery on June 7, 1991, and therefore, should be entitled to coverage regarding this surgery and the related expenses of his post-operative treatment. (Plaintiff's Argument in Support of Resistance to Motion for Summ.J., p. 1.).

A district court within the Eighth Circuit has addressed the problem of dueling clauses in an employer welfare plan, specifically where a defendant attempts to exclude a claimant's medical expenses because they relate to a pre-existing condition, and the claimant argues that he received pre-certification for the treatment creating the expenses. *See England v. John Alden Life Ins. Co.*, 846 F.Supp. 798 (W.D.Mo.1994). In *England,* the claimant contended that because his hospitalization was pre-certified, the defendant should be prevented from invoking the pre-existing illness clause. *Id.* at 802. The court did not find this interpretation of the plan persuasive, finding as follows:

> Under the terms of the policy, the purpose of pre-certification was to insure that hospitalization was medically necessary. The pre-existing illness clause, on the other hand, was a substantive provision of the policy which precluded coverage under certain conditions. The two clauses are compatible in that coverage applied when a hospitalization was certified as medically necessary and when it did not involve a pre-existing illness. The court finds that the two clauses are not mutually exclusive and rejects [claimant]'s interpretation of the policy.

*Id.*

Likewise, Kracht argues that because he complied with pre-certification procedures for emergency surgery in Aalfs' health care plan, Aalfs cannot invoke the pre-existing illness clause in its health care plan to deny Kracht coverage for his medical expenses. Under the terms of Aalfs' health care policy, the purpose of hospital preadmission certifi-

cation is to curtail "unnecessary admissions and inappropriate utilization of services" and to provide care in a cost-effective manner. (Affidavit of Melanie Nieman, Exhibit 1, p. 14.). The pre-existing condition clause is a substantive provision within Aalfs' health care plan which precludes coverage under certain conditions. Based on the reasoning in *England,* it appears that these two clauses in Aalfs' health care plan are not mutually exclusive. However, Kracht claims the administrator's decision to ignore Kracht's adherence to the pre-certification clause and apply the pre-existing condition clause to exclude him under the plan was an abuse of discretion. To address Kracht's argument, the court proceeds to review Aalfs' interpretation of its health care plan language and apply the *Finley* factors to determine whether the administrator's decision was "extraordinarily imprudent or extremely unreasonable." *See Lickteig,* 61 F.3d at 584–85 (applying *Finley* ); *Finley,* 957 F.2d at 621.

We turn to the first, fourth, and fifth *Finley* factors, specifically, whether Aalfs' interpretation is consistent with the goals of the plan, whether Aalfs has interpreted the provisions at issue here consistently, and whether Aalfs' interpretation is contrary to the clear language of Aalfs' plan. Aalfs' interpretation appears to be consistent with the goals of the plan and these provisions in particular, which are to grant benefits to those claimants who incur covered expenses as a result of illness or injury. (Affidavit of Melanie Nieman, Exhibit 1, p. 14.). Aalfs' plan states in unambiguous language its provisions and purposes behind its provisions regarding hospital pre-certification and exclusions regarding pre-existing conditions. Furthermore, Aalfs has interpreted these two provisions consistently. These two provisions are compatible in that a claimant could pre-certify his surgery before admission and receive benefits so long as the surgery is not related to a pre-existing illness. In addition, Aalfs' interpretation is clearly in accordance with the language of the health care plan.

Regarding the last two *Finley* factors, the court first examines whether Aalfs' interpretation renders any language in Aalfs' plan meaningless or internally inconsistent. As previously noted, these two provisions can clearly be read together to grant benefits to an individual who pre-certifies a hospital visit that does not relate to a pre-existing condition. Kracht merely did not fulfill the requirement that his surgery not relate to a pre-existing illness. Lastly, there appears to be no conflict between Aalfs' interpretation and the substantive or procedural requirements of the ERISA statute, as outlined in 29 U.S.C. § 1001 *et seq.* Therefore, the court finds that Aalfs' decision to exclude Kracht from coverage under its plan on the grounds that his expenses relate to a pre-existing condition, even though Kracht followed Aalfs' hospital preadmission certification procedure, was not an abuse of discretion.

The court is mindful of the harsh result to Kracht in this case. The court also understands the onerous burden Kracht will endure in being saddled with these medical expenses. Unfortunately, this will undoubtedly compound the unfathomable physical and emotional hardships Kracht has already suffered because of his cancer. However, the court has an unwavering obligation to apply the law to every case that comes before it, even when the court is sympathetic to the plaintiff's plight and abhors the result of its decision. Therefore, because Kracht has failed to generate a material question of fact regarding his case and the administrator's decision to deny benefits was not an abuse of discretion, the court must grant Aalfs' motion for summary judgment.

## V. CONCLUSION

Based on the arguments raised and the evidence presented by the parties, the court concludes Kracht exhibited symptoms of his testicular cancer on May 30, 1991, before the effective date of his insurance coverage under Aalfs' health care plan. Although Kracht was given an inaccurate diagnosis at this time, Kracht nonetheless received treatment and advice regarding symptoms for the cancer that existed on May 30, 1991. Because Kracht received treatment and advice regarding an illness which proved to be cancer before the effective date of his coverage un-

der Aalfs' health care plan, there is no genuine issue of material fact regarding whether Kracht incurred his medical expenses as a result of a pre-existing condition. Furthermore, the court concludes that Aalfs' decision to exclude Kracht from coverage under its plan because his medical expenses relate to a pre-existing condition, even though Kracht complied with the pre-certification process for his surgery under the terms of the plan, was not an abuse of discretion. Therefore, the court regrettably grants Aalfs' motion for summary judgment.

**IT IS SO ORDERED.**